

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV – 9 2001

CLERK, U.S. DISTRICT COURT
By _____
　　　　　　　Deputy

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY,<br>ALLSTATE INDEMNITY COMPANY,<br>and ALLSTATE PERSONAL PROPERTY<br>& CASUALTY COMPANY,<br>    Petitioners | §<br>§<br>§<br>§<br>§<br>§ | |
| vs. | §<br>§ | |
| RECEIVABLE FINANCE COMPANY,<br>L.L.C, ADVANCED MEDICAL SYSTEMS<br>& SOLUTIONS, P.L.L.C., and MARLON<br>D. PADILLA, M.D., P.A.<br>    Respondents | §<br>§<br>§<br>§<br>§ | |

3 - 0 1 C V 2 2 4 7 - M

Civil Action No. _____

## ORIGINAL COMPLAINT FOR DECLARATORY RELIEF

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Come now **ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY,** and **ALLSTATE PERSONAL PROPERTY & CASUALTY COMPANY,** hereinafter referred to as "Petitioners" and complain of **RECEIVABLE FINANCE COMPANY, L.L.C., ADVANCED MEDICAL SYSTEMS & SOLUTIONS, P.L.L.C.,** and **MARLON D. PADILLA, M.D., P.A.,** hereinafter referred to collectively as "Respondents," and singularly as "Receivable Finance," "Advanced Medical," and "Padilla" respectively, and for such action would respectfully show the Court as follows:

**ORIGINAL COMPLAINT FOR DECLARATORY RELIEF   Page 1**

# I.
## PREDICATE

1.      This Complaint requests relief under the Federal Declaratory Judgment Act, 28 United States Code, Section 2201, and is brought by Petitioners to determine their duty to pay for purported medical treatment of certain insureds, and third parties making claim against insureds, billed through Respondent Receivable Finance (with some of said accounts subsequently transferred to Respondent Advanced Medical and/or Respondent Padilla), and their right to recover such payments previously made.  Specifically, Petitioners would show this Honorable Court that Receivable Finance acts as a device for the procuring of medical and osteopathic doctors by laymen, and that Receivable Finance acts as a conduit for the billing and collection of medical fees and the disbursement of the majority of these medical fees to unlicensed lay persons.  Petitioners would, therefore, show that Receivable Finance is engaged in the unauthorized, corporate practice of medicine, in violation of the Texas Medical Practices Act and Texas common law, and that the contracts between Receivable Finance and various medical and osteopathic doctors are illegal, void, against public policy, and unenforceable against any person. Petitioners would further show that they are under no obligation to pay the purported medical fees billed through Receivable Finance, and that they are entitled to reimbursement from Respondent for all such payments previously made.

2.      Petitioners would also show, on information and belief, that there has been a purported recent sale of some assets of Respondent Receivable Finance (which were gained through the unauthorized practice of medicine) to Respondent Advanced Medical and/or Respondent Padilla. Petitioners would further show that they are under no obligation to

**ORIGINAL COMPLAINT FOR DECLARATORY RELIEF  Page 2**

pay the purported medical fees billed through Receivable Finance, and later assigned, sold, or otherwise transferred to Advanced Medical and/or Padilla, and that they are entitled to reimbursement from Respondents Advanced Medical and Padilla for all such payments previously made.

## II.
## JURISDICTION AND VENUE

3.      Pursuant to Title 28, United States Code, Section 1332(a), this Court has subject matter jurisdiction because the amount in controversy in this civil action exceeds $75,000.00, exclusive of interest and costs, Petitioners are citizens and residents of the State of Illinois, and Respondents are citizens and residents of the State of Texas. (See paragraphs 5 through 10 herein). Petitioners would specifically show that they are incorporated under the laws of the State of Illinois and their principal places of business are in the State of Illinois. Petitioners would specifically show that Respondents Receivable Finance and Advanced Medical are limited liability companies established under the laws of the State of Texas, and that Respondent Padilla is a professional association established under the laws of the State of Texas, whose only member is a citizen and resident of the State of Texas, and that all Respondents' principal places of business are in the State of Texas. There are no other parties to this civil suit other than those referenced above. Petitioners would show that there is complete diversity of citizenship between themselves and Respondents.

4.      Venue is proper in this District pursuant to Title 28, United States Code, Section 1391 (a) and (c) in that a substantial part of the events or omissions giving rise to the claims alleged herein occurred within this District, and Respondents' principal offices are within this District.

**ORIGINAL COMPLAINT FOR DECLARATORY RELIEF  Page 3**

### III.
### PARTIES

5.    Petitioner, **ALLSTATE INSURANCE COMPANY,** is a corporation incorporated under the laws of Illinois, with its principal place of business in Illinois.

6.    Petitioner, **ALLSTATE INDEMNITY COMPANY,** is a corporation incorporated under the laws of Illinois, with its principal place of business in Illinois.

7.    Petitioner, **ALLSTATE PERSONAL PROPERTY & CASUALTY COMPANY,** is a corporation incorporated under the laws of Illinois, with its principal place of business in Illinois.

8.    Respondent, **RECEIVABLE FINANCE COMPANY, L.L.C.,** is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Dallas, Texas.  Respondent may be served through its registered agent for service, Mr. Victor Zanetti, 1717 Main Street, Suite 4100, Dallas, Texas 75201, or through its sole manager, Robert Smith, 8080 Park Lane, Suite 500, Dallas, Texas 75231.

9.    Respondent, **ADVANCED MEDICAL SYSTEMS & SOLUTIONS, P.L.L.C.,** is a professional limited liability company organized under the laws of the State of Texas, with its principal place of business in Dallas, Texas.  Respondent may be served through its registered agent for service, Dr. Marlon Padilla M.D., 381 Casa Linda Plaza, Suite 374, Dallas, Texas 75218-3423, or 7115 Lakeshore Drive, Dallas, Texas 75214.

10.    Respondent, **MARLON D. PADILLA, M.D., P.A.,** is a professional association organized under the laws of the State of Texas, with its principal place of business in Dallas, Texas.  Respondent's sole member, Marlon D. Padilla, is a citizen and resident of the State of Texas.  The Respondent may be served through its registered agent for

**ORIGINAL COMPLAINT FOR DECLARATORY RELIEF  Page 4**

service, Dr. Marlon Padilla, M.D., 381 Casa Linda Plaza, Suite 374, Dallas, Texas 75218-3423, or 7115 Lakeshore Drive, Dallas, Texas 75214.

## IV.
## STATEMENT OF FACTS

### Common Ownership of Respondent and Health Care Entities

11.    Accident & Injury Pain Centers, Inc., conducts business through thirteen (13) chiropractic clinics in the Dallas/Fort Worth metroplex, as well as two clinics in San Antonio and three clinics in Houston.    Documents filed with the Texas Board of Chiropractic Examiners show that the president/CEO and sole shareholder of Accident & Injury Pain Centers, Inc. is Robert M. Smith.

12.    Accident & Injury Pain Centers, Inc., treats a large volume of patients making bodily injury claims as a result of automobile collisions.    Claims made by these patients in the Dallas/Fort Worth area show a near universal pattern of patient referrals by Accident & Injury to other entities:

a.    The patient's x-rays taken at the Accident & Injury clinic are almost always forwarded for "second opinion" review to "Lone Star Radiology."    Dr. Kenneth Lustik, D.C., interprets the vast majority of these x-rays.

b.    The patient is routinely referred to a medical doctor (M.D. or D.O.) for "second opinion" examination.    There are a limited number of medical doctors to whom the patients are referred, including (during the relevant period) Dr. Marlon Padilla, M.D., Dr. James Laughlin, D.O., Dr. Douglas Wood, D.O., Dr. Heriberto Salinas, M.D., and Dr. Samuel Remer, D.O. The medical doctor usually travels to an Accident & Injury clinic to perform these examinations.

ORIGINAL COMPLAINT FOR DECLARATORY RELIEF  Page 5

      c.      The patient is generally referred for an MRI or MRI's. The referral is made to one of two MRI facilities – "White Rock Open Air MRI" or "North Texas Open Air MRI." Dr. Dee Martinez, M.D, interprets the vast majority of these MRI scans.

13.    Documents filed with the Texas Secretary of State show Robert Smith is the sole manager of both White Rock Open Air MRI, L.L.C. and North Texas Open Air MRI, L.L.C.

14.    Documents filed with the Texas Secretary of State and the Dallas County Clerk show "Metroplex Pain Center, Inc." is the corporate owner of Lone Star Radiology, and that Robert Smith is the president, director, and registered agent of Metroplex Pain Center, Inc. In a recent deposition of Receivable Finance in a Texas state court proceeding, the representative of Receivable Finance (who testified that he is also an employee of Accident & Injury Pain Centers, Inc.) verified that Metroplex Pain Center, Inc. is wholly owned by Accident & Injury Pain Centers, Inc., and that through the year 2000, Dr. Lustik was an employee of Accident & Injury Pain Centers, Inc.

15.    Documents filed with the Texas Secretary of State show that the manager of Respondent Receivable Finance Company is also Robert Smith. Two medical doctors (Dr. Marlon Padilla and Dr. James Laughlin) have testified in Texas state court proceedings that Robert Smith is the owner of Receivable Finance. In a recent deposition of Receivable Finance in a Texas state court proceeding, the representative of Receivable Finance verified that Robert Smith is the president of Receivable Finance Company, L.L.C., and that Robert Smith is the only member (owner) of the company.

**ORIGINAL COMPLAINT FOR DECLARATORY RELIEF  Page 6**

## V.
## Respondent Receivable Finance's Operations

16.    Discovery conducted in a number of Texas state court proceedings has revealed a relationship between Receivable Finance and medical doctors who are referred Accident & Injury patients for "second opinion" examinations, that is violative of the Medical Practices Act.  In the course of discovery in several of these cases, a document styled "Notice of Assignment and Direction to Remit Payments in Reference To:," has been produced in regard to Drs. Padilla, Laughlin, Wood, Salinas, and Remer.  This document reads in relevant part as follows:

> Please be advised that we have transferred your account for medical services rendered by  **[physician's name]**  Your account is now owned by Receivable Finance Company, L.L.C. ("RFC")."  Accordingly, until further notice, you are hereby directed to make all payments and remittances on such account to the following address:
>
> Receivable Finance Company, L.L.C.
> PO Box # 891616
> Dallas, TX 75389-1616
> Tina Cheshire
> 214-946-1420
>
> All such payments and remittances will be made payable to RFC.  This direction may not be revoked or changed without the prior written consent of RFC.  Please continue to direct any questions you may have concerning your contracts and accounts with us to the undersigned.

* * * * * *

17.    Various invoices of "second opinion" medical doctors produced in the Texas state court cases, and in other claims filed with Petitioners, show a billing address of P.O. Box 891616, Dallas, Texas, the address identified in the "Notices of Assignment" as that of Receivable Finance.  (In state court deposition testimony, Dr. Padilla has identified the address on his billings as being that of Receivable Finance).  Likewise, a number of

invoices for North Texas Open Air MRI/Dr. Dee Martinez and White Rock Open Air MRI/Dr. Dee Martinez list the same billing address, as do a number of invoices for Lone Star Radiology.   HCFA billing forms for the medical doctors, MRI facilities/Dr. Martinez, and Lone Star Radiology have also been produced showing this address.

18.      Additionally, a number of the "second opinion" medical doctors' narrative reports and Lone Star Radiology reports, produced in claims or in lawsuit discovery, have listed an address of P.O. Box 891616, Dallas, Texas.

**A.      Past testimony of Dr. Padilla**

19.      In a 2000 state court deposition, Dr. Marlon Padilla testified 98-100% of his patients were Accident & Injury referrals, and he sees 150 to 200 patients per week at Accident & Injury clinics in Dallas, Fort Worth, Arlington, Houston, and San Antonio.   He testified Receivable Finance did his billings, and Receivable Finance was owned by "Bob Smith of Accident & Injury."   The mailing address on his bills was "just a mailing box for a bank account where the checks are delivered," and Receivable Finance receives and deposits the checks.   Robert Smith "purchases" the bill from him at a percentage; his $275 bill was purchased for about 11 or 12 percent, roughly $35.   Dr. Padilla affirmed the remainder of the fee was Robert Smith's property.

20.      Dr. Padilla testified Accident & Injury generates his narrative reports and his patient files are maintained at 8080 Park Lane (which is the corporate headquarters of Accident & Injury).   The street address on his reports was just a drop box for packages and items too large for a post office box.   Dr. Padilla also admitted he suggested MRI's be performed in the majority of his referrals, and affirmed this was the rule rather than exception.

21.    In a subsequent 2000 state court deposition, Dr. Padilla testified he was introduced to Accident & Injury by Dr. Dee Martinez, a radiologist who reads MRI scans. Dr. Martinez introduced him to Robert Smith. He testified he accepts "referrals" from all fourteen Accident & Injury clinics, including the San Antonio and Houston locations, and sees 600 to 700 Accident & Injury patients per month. He does not have an examination office, so he sees these patients at the various Accident & Injury clinics.

22.    Dr. Padilla initially claimed the P.O. box address listed on his medical bill was his, and was in his name. He then admitted that Receivable Finance, a "billing company," also used the P.O. box, and the box was really in Receivable Finance's name. Dr. Padilla refused to identify the owner of Receivable Finance on the instructions of Attorney Lindy Jones. In recent state court cases, Attorney Jones has also represented Receivable Finance, as well as Accident & Injury, Robert Smith, and a number of chiropractors.

23.    Dr. Padilla identified 8080 Park Lane, Suite 500 as the location where his records are stored, and affirmed this is the address of Accident & Injury. He then testified the records were actually held by Receivable Finance, and that Receivable Finance was on the same floor as Accident & Injury's office.

**B.    Past testimony of Dr. Laughlin**

24.    Dr. James Laughlin testified in a state court deposition in 2001. He testified he joined the "Association of Orthopedic and Dermatological Consultants, P.A." (or "AODC"), which in turn entered into an arrangement with Accident & Injury. He met with Robert Smith prior to commencing this relationship. Dr. Laughlin would travel to an Accident & Injury clinic to perform his examinations, including, occasionally, clinics in Houston and

San Antonio.   Accident & Injury generated his narrative reports, and he encountered problems with Accident & Injury adding superfluous findings not included in his notes, especially in areas of causation and future medical needs.

25.    Dr. Laughlin testified Dr. Padilla approached him and advised he was relaying a message from Robert Smith.  The message was that Dr. Laughlin was to recommend at least ten percent of the Accident & Injury patients he saw for surgery, if he wished to continue seeing Accident & Injury patients.

26.    Dr. Laughlin understood Receivable Finance is owned by Robert Smith or one of Mr. Smith's corporations.   Robert Smith was involved in the negotiations between Receivable Finance and AODC.  Receivable Finance would "buy" Dr. Laughlin's billing accounts from AODC, and pay AODC a monthly sum.  AODC received a set sum of money, whether Dr. Laughlin saw one patient a month or a thousand patients a month.  The monthly sum was eleven (11) percent of what Robert Smith anticipated collecting on the accounts.  Later, Receivable Finance proposed a successor contract, under which AODC would still be paid a flat fee, and Accident & Injury would continue to provide billings, transcriptions, examination space, and assistants.  However, AODC would pay back a fee for the "rental" of the space and other services, of over $300,000 a year.

**C.    Past Testimony of Dr. Jeffrey Crocoll**

27.    Chiropractor Jeffrey Crocoll also testified in a 2000 state court deposition. Chiropractor Crocoll identified himself as Accident & Injury's Director of Operations and the head of it's production department, which generates narrative reports and maintains records.  In addition to Accident & Injury, his department also maintains the records of Lone Star Radiology, Dr. Padilla, Dr. Laughlin, Dr. Wood, and the MRI facilities.

28.     Chiropractor Crocoll testified that Tina Cheshire also offices at Accident & Injury's corporate office, and Ms. Cheshire was an Accident & Injury employee in charge of the Accident & Injury collection department.  (As noted above, Tina Cheshire is identified as the contact person for Receivable Finance, to whom payments for medical bills were to be sent).

**D.     Past Testimony of Receivable Finance Representative**

29.     In October 2000, Receivable Finance was noticed for deposition in a Texas state court proceeding.  Receivable Finance filed a motion for protective order in regard to the deposition notice, which was heard by the Texas District Court on December 19, 2000.  On January 22, 2001, the Texas District Court entered an order allowing the deposition to proceed on specified topics, and ordering Receivable Finance to produce certain specified categories of documents.   Thereafter, Receivable Finance filed a petition for writ of mandamus with the Texas Court of Appeals (on or about March 2, 2001) seeking to prevent the deposition and, when that petition was denied, Receivable Finance filed a similar petition with the Supreme Court of Texas (on or about April 18, 2001).   After the second petition was also denied, Receivable Finance filed a motion for rehearing with the Supreme Court of Texas (on or about May 10, 2001), which was denied on June 14, 2001.

30.     On August 7, 2001, Steven W. Lambert appeared at deposition as Receivable Finance's designated representative.   Mr. Lambert identified himself as Receivable Finance's chief financial officer. He also identified himself as the chief financial officer and chief operations officer of Accident & Injury Pain Centers, Inc.   Elsewhere in the deposition, Mr. Lambert testified that he was also chief financial officer of North Texas Open Air MRI, L.L.C., White Rock Open Air MRI, L.L.C., and the recently formed Lone Star Radiology Management, L.L.C.

**ORIGINAL COMPLAINT FOR DECLARATORY RELIEF  Page 11**

31.     Mr. Lambert testified that Receivable Finance's business consisted of purchasing medical accounts receivable.  The purchases were limited to:  (1) receivables of medical doctors generated in regard to examinations of Accident & Injury patients, and (2) receivables generated from the professional fees for review and interpretation of MRI films from MRI's conducted at North Texas Open Air MRI, White Rock Open Air MRI, and two MRI facilities located in Harris and Bexar counties, which Mr. Lambert identified as "DBA's" of North Texas Open Air MRI.

32.     In regard to Receivable Finance's "factoring" business, Mr. Lambert testified that:

a.      Receivable Finance has only one employee, and this person is also the office manager for Accident & Injury Pain Centers, Inc.

b.      Receivable Finance leases space at Accident & Injury's corporate office. However, there is no space particularly set aside for Receivable Finance's exclusive use.

c.      Receivable Finance has a "management agreement" with Accident & Injury, whereby Accident & Injury provides services, such as billings and collection services to Receivable Finance.  Accident & Injury employees, such as Tina Cheshire, are authorized to negotiate and compromise medical billings on Receivable Finance's behalf.

d.      Receivable Finance has an agreement with Accident & Injury, whereby Accident & Injury provides services, such as billings, narrative report generation, and assistants, to the medical doctors who sell their receivables to Receivable Finance.   Receivable Finance pays a monthly fee to

Accident & Injury for these services; in the case of Dr. Laughlin, the fee was $25,000.00 per month.

e.     Receivable Finance originally paid Dr. Laughlin's professional association 11% of the gross face amount billed in regard to the examinations of Accident & Injury patients. This percentage was later increased to 18%, in consideration of Dr. Laughlin agreeing to also see patients at Accident & Injury clinics in San Antonio and Houston.

f.     Receivable Finance paid Dr. Martinez 7% of the value of his bill for MRI reads from the specified facilities, about $20 per scan. The only support services provided by Accident & Injury and related entities to Dr. Martinez is office space at the MRI facilities, where Dr. Martinez interprets some MRI films, and the delivery of other MRI films to Dr. Martinez for interpretation.

33.    Mr. Lambert testified that, in February 2001, Receivable Finance sold a portion of its assets, the accounts receivable, to a professional association of Dr. Marlon Padilla. Dr. Padilla's entity purchased all the accounts receivable, with the exception of the accounts receivable for MRI interpretations and reports generated by Dr. Dee Martinez. (It should be noted that this "sale" occurred soon after the Texas District Court entered an order allowing Receivable Finance's deposition to proceed, and shortly before Receivable Finance began filing mandamus petitions in an attempt to prevent the deposition).

34.    Mr. Lambert testified that Receivable Finance ceased purchasing medical accounts receivable from all physicians by February 2001.

**ORIGINAL COMPLAINT FOR DECLARATORY RELIEF**  Page 13

## V.

35.    On information and belief, Respondent Advanced Medical and/or Respondent Padilla is the entity which purchased medical accounts receivable from Respondent Receivable Finance.

## VI.
## RELIEF SOUGHT

36.    Petitioners hereby request a declaration from this Honorable Court that they are not liable for, and do not owe, any sum of money for alleged medical fees orchestrated through the association between Receivable Finance, Accident & Injury, and medical doctors, and that they are entitled to recover any such payments previously made.

37.    Petitioners hereby request a declaration from this Honorable Court that they are not liable for, and do not owe, any sum of money for any of the alleged medical fees referenced above, whose accounts receivable have been sold or otherwise transferred to Respondent Advanced Medical or Respondent Padilla, and that they are entitled to recover any such payments previously made.

38.    In support of this request for declaratory relief, Petitioners would respectfully show that the Texas Occupations Code, § 155.01 prohibits a person from practicing medicine in the state unless they are licensed to do so.  Sections 164.051 and 164.052(17) of the code prohibit a physician from directly or indirectly aiding or abetting the practice of medicine by a person or entity that is not licensed to practice medicine.

39.    Petitioners would also respectfully show that Texas law provides a corporation comprised of lay-persons, that employs licensed physicians to treat patients and receives fees for the services provided, is engaged in the unlawful practice of medicine, in violation

of the Texas Medical Practices Act. *See Garcia v. Texas State Board of Medical Examiners*, 384 F. Supp. 434 (W.D. Tex., 1974), *aff'd* 421 U.S. 995 (1975); *Flynn Brothers, Inc. v. First Medical Associates*, 715 S.W.2d 782 (Tex. App. – Dallas 1986, writ ref'd n.r.e.).

40.    Petitioners would show that the transfer of medical accounts receivable obtained by lay entities through the unlawful practice of medicine, to a professional medical association, does not validate said billings.

## VII.

41.    Petitioners would show that Receivable Finance Company, L.L.C., is engaged in the unauthorized corporate practice of medicine, in violation of the Texas statutory and common law. Specifically:

42.    Receivable Finance is a lay entity, not licensed to practice medicine.

43.    Receivable Finance is the de-facto employer of medical doctors, to whom patients are referred for "second opinion" examination by Accident & Injury. Receivable Finance and Accident & Injury have a common ownership, and share an office and employees.

44.    Receivable Finance is the de-facto employer of another medical doctor, to whom patients' diagnostic scans are referred for interpretation through North Texas Open Air MRI and White Rock Open Air MRI. Receivable Finance, Accident & Injury, and these two MRI facilities have a common ownership, and the medical fees generated from these referrals are billed thorough Receivable Finance.

45.    Receivable Finance directly collects and deposits the payments for medical fees purportedly billed by these medical doctors through its bank.

46.    Receivable Finance pays the medical doctors only a small portion of the medical fee the physician generates.

47.    Receivable Finance retains the vast majority of the medical fees generated by these medical doctors. On information and belief, Receivable Finance disburses these funds to the common owner of Receivable Finance, Accident & Injury, and the diagnostic facilities to which Accident & Injury refers patients.

48.    Accident & Injury Pain Centers, Inc., through a "management agreement" with Receivable Finance, provides document maintenance, examination space, report generation, billing generation, and assistants to the medical doctors. Thus, Receivable Finance controls the physician-patient relationship in regard to these referrals.

49.    The common ownership between Receivable Finance, Accident & Injury, and other entities to whom patients are referred for diagnostic tests and examinations, creates an incentive for the referral of patients for unnecessary and unreasonable treatment, which is then billed through Receivable Finance.

50.    Any contracts or agreements between Receivable Finance and medical doctors in regard to medical fees are illegal and void as a matter of law and public policy, and are unenforceable against any person or company.

51.    The alleged "sale" of medical accounts receivable to Respondent Advanced Medical and/or Respondent Padilla does not change the illegal nature of these fees.

52.    Petitioners would further respectfully show that this matter is ripe for declaratory relief, and that the Court's determination of the issues presented will conclusively resolve the questions of Petitioners' duty to pay sums to Respondent Receivable Finance, and its successor in interest, Respondent Advanced Medical and/or Respondent Padilla, and their rights to reimbursement for sums previously paid.

## VIII.

53.     As shown herein, the purported "sale" of medical accounts receivable of Respondent Receivable Finance to Respondent Advanced Medical and/or Respondent Padilla occurred soon after a litigant sought Receivable Finance's deposition in a Texas state court proceeding.  The transfer purportedly occurred in February 2001, the month following the Texas District Court's entry of an order allowing the deposition to proceed, and just prior to Receivable Finance filing a petition for writ of mandamus with the Texas Court of Appeals. The transfer was purportedly to a professional association of Dr. Marlon Padilla, M.D.; Dr. Padilla is one of the "second opinion" medical doctors who saw Accident & Injury patients and "assigned" his medical fees to Respondent Receivable Finance.

54.     Given the unusual nature and timing of the sale of medical accounts receivable to Respondent Advanced Medical and/or Respondent Padilla, it is possible that these assets may again be transferred to another person or entity.  It is also possible that the remaining medical accounts receivable held by Respondent Receivable Finance may be transferred to another person or entity.  In such event, Petitioners would show that the transfer or further transfer of these medical fees does not change the illegal nature of the fees, and that any "purchaser" or other transferee may be valid parties.

## IX.
## JURY DEMAND

55.     Trial by jury is requested on all legal issues.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Petitioners **Allstate Insurance Company, Allstate Indemnity Company,** and **Allstate Personal Property & Casualty**

ORIGINAL COMPLAINT FOR DECLARATORY RELIEF  Page 17

**Company,** respectfully request that upon final trial of this cause, the Court enter a judgment as follows:

(1)    A declaration that Respondent **Receivable Finance Company, L.L.C.,** is engaged in the unauthorized employment of medical and osteopathic physicians;

(2)    A declaration that Respondent **Receivable Finance Company, L.L.C.,** is engaged in the unauthorized corporate practice of medicine;

(3)    A declaration that any contracts or agreements between Respondent **Receivable Finance Company, L.L.C.,** and medical and osteopathic physicians are illegal and void as a matter of law;

(4)    A declaration that any contracts or agreements between Respondent **Receivable Finance Company, L.L.C.,** and medical and osteopathic doctors are void as a matter of public policy;

(5)    A declaration that Petitioners are not obligated to pay any amount billed by or through Respondent **Receivable Finance Company, L.L.C.,** in regard to any fee for medical services, including any such fees subsequently transferred to Respondents **Advanced Medical Systems & Solutions, P.L.L.C.** or **Marlon D. Padilla, M.D., P.A.,** or to any other person or entity;

(6)    A declaration that all medical services previously billed through Respondent **Receivable Finance Company L.L.C.,** were billed in violation of the Texas Medical Practices Act, including any such fees subsequently transferred to Respondents **Advanced Medical Systems & Solutions, P.L.L.C.** or **Marlon D. Padilla, M.D., P.A.,** or to any other person or entity; and

(7)    Granting such other and further relief to which Petitioners may be justly entitled.

Respectfully submitted,



**DAVID KASSABIAN**
**TEXAS STATE BAR NO. 11105600**
**BRET WEATHERFORD**
**TEXAS STATE BAR NO. 20998800**

**KASSABIAN & DOYLE, P.C.**
1521 North Cooper Street
Suite 650, LB 21
Arlington, TX 76011
(817) 460-5099 (Local)
(817) 461-8855 (Metro)
(817) 274-9863 (Facsimile)

**ATTORNEYS FOR PETITIONERS**