IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE PERSONAL PROPERTY & CASUALTY COMPANY,<br>　　Petitioners<br><br>vs.<br><br>RECEIVABLE FINANCE COMPANY, L.L.C, ADVANCED MEDICAL SYSTEMS & SOLUTIONS, P.L.L.C., and MARLON D. PADILLA, M.D., P.A.<br>　　Respondents | Civil Action No. 3-01CV2247-M |

### PETITIONERS' RESPONSE TO RESPONDENT RECEIVABLE FINANCE COMPANY'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISIDCTION AND TO LIMIT DISCOVERY

**TO THE HONORABLE U.S. MAGISTRATE JUDGE:**

Comes now Allstate Insurance Company, Allstate Indemnity Company, and Allstate Personal Property & Casualty Company ("Petitioners") and file this Response to the Motion to Dismiss and to Limit Discovery of Receivable Finance Company, L.L.C. ("Receivable Finance"), and respectfully show the following:

**I.**

1.　On March 28, 2002, Receivable Finance filed its *Respondent's Motion to Dismiss for Lack of Subject Matter Jurisdiction and to Limit Discovery, and Brief in Support Thereof*. Receivable Finance states the Motion is brought under Federal Rule of Civil Procedure 12(b)(1).

2.  This action was filed on November 9, 2001. Receivable Finance has previously brought an unsuccessful Rule 12(b) motion to dismiss. Specifically, it filed a Rule 12(b)(6) Motion on November 28, 2001, which the U.S. Magistrate Judge recommended be denied. The U.S. District Judge accepted the recommendation on February 26, 2002, and Receivable Finance filed its Answer on March 12, 2002.

3.  The March 28, 2002 *Respondent's Motion to Dismiss for Lack of Subject Matter Jurisdiction and to Limit Discovery, and Brief in Support Thereof* (the "Rule 12(b)(1) Motion") should have been filed with Receivable Finance's previous Rule 12(b) Motion. FED.R.CIV.P. 12(b)(g). The Court should therefore deny the Rule 12(b)(1) Motion.

## II.

4.  The Rule 12(b)(1) Motion presents an inadequate attack upon Petitioners' assertion of at least $75,000 in controversy. Petitioners' Complaint alleges that Receivable Finance has engaged in the unauthorized, corporate practice of medicine. The Complaint specifically cites five 'second opinion' medical doctors involved with Receivable Finance, as well as a sixth medical doctor who evaluation MRI scans. (In its Answer, Receivable Finance indicates further medical doctors were involved). The Complaint seeks declaratory relief in regard to both (1) medical billings purportedly 'sold' by these doctors to Receivable Finance, and previously paid by Petitioners, and (2) such billings that remain outstanding.

5.  The Complaint references, at length, prior sworn testimony in state court proceedings, including Receivable Finance's own designated representative (Steven Lambert), Dr. Marlon Padilla (the principle of the other Respondents), and Dr. James Laughlin (one of the other medical doctors at issue). The referenced testimony shows,

among other matters, that large sums of medical billings were allegedly 'assigned' to Receivable Finance.

6.  The Rule 12(b)(1) Motion complains that the $75,000 amount in controversy has not been reached. However, Receivable Finance only references payments made to one medical doctor, Dr. Padilla. It references only the years 2000 and 2001 (Receivable Finance was formed in March 1999). Also, Receivable Finance fails to address payments made for Dr. Padilla's billings it would have received from claimants' attorneys (for which it should maintain records). Finally, the Motion ignores all outstanding medical billings.

7.  Since the Rule 12(b)(1) Motion does not contest the majority of the allegations in the Complaint, and only inadequately addresses amounts paid to Dr. Padilla and his entities, it does not challenge the good faith jurisdictional sum alleged by Petitioners. Therefore, the Court should deny the Rule 12(b)(1) Motion.

### III.

8.  The existing evidence counters Receivable Finance's suggestion that it received only small sums of money in regard to the medical billings at issue. On at least two prior occasions, Dr. Padilla has testified he saw 150 to 200 Accident & Injury Chiropractic patients a week. Dr. Padilla testified he sold these billings to Receivable Finance. Dr. Laughlin has previously testified he saw from 40 to 60, and sometimes up to 80 Accident & Injury Chiropractic patients a day. Dr. Laughlin testified that these billings were also sold to Receivable Finance. Both doctors have testified that they received only 11% of their fee in these transfers to Receivable Finance.[1] Receivable Finance's representative, Steven

---

[1] Although Dr. Laughlin testified that this 11% was in the nature of a flat fee, based on the projected number of patients he would see a month.

PETITIONERS' RESPONSE TO RECEIVABLE FINANCE'S MOTION TO DISMISS    Page 3

Lambert, testified that Dr. Dee Martinez, M.D., the physician who read the MRI scans, received only 7% of his medical fee from Receivable Finance.

9.      Documentary evidence produced in state court by Receivable Finance shows that it paid Dr. Laughlin's association $18,000 a month under this arrangement. The documentary evidence also shows that Receivable Finance paid Dr. Martinez over $14,000 in June 1999 alone, in regard to only one MRI facility.

10.     Additionally, Petitioner's Complaint cites three other medical doctors known to have seen Accident & Injury Chiropractic patients, who were involved with Receivable Finance, and three other MRI facilities associated with Receivable Finance, for which Dr. Martinez read the MRI scans of Accident & Injury patients.

11.     Since the existing evidence refutes Receivable Finance's claim that only small sums are in contention, the Court should deny the Rule 12(b)(1) Motion.

## IV.

12.     The Court should deny the request to "limit" discovery. The Rule 12(b)(1) Motion actually requests that the Court prohibit Petitioners from any discovery, pending determination of the Motion. Receivable Finance should be in possession of documents showing the exact sums it has received in past payments of claims, and the outstanding sums that it currently holds or allegedly sold to Dr. Padilla's entities. Thus, while complaining that Petitioners do not show the required jurisdictional amount in controversy, Receivable Finance requests the Court to disallow Petitioner to conduct discovery into the matter.

13.     Receivable Finance filed two unsuccessful pre-answer motions (the 12(b)(6) Motion and a 'gag order' motion), and has now filed this Rule 12(b)(1) Motion, with its request to

disallow Petitioner from conducting discovery. The present Motion is merely another attempt to delay progression of this case. The request to 'limit' discovery should be denied.

Respectfully submitted;

_____
DAVID KASSABIAN
TEXAS STATE BAR NO. 11105600
BRET WEATHERFORD
TEXAS STATE BAR NO. 20998800

KASSABIAN, DOYLE &
   WEATHERFORD, P.C.
1521 North Cooper Street
Suite 650, LB 21
Arlington, TX 76011
(817) 460-5099 (Local)
(817) 461-8855 (Metro)
(817) 274-9863 (Facsimile)

ATTORNEYS FOR PETITIONERS

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing Response has been served on the following by certified mail, return receipt requested, this _____ day of April, 2002:

Mr. Lindy Jones
Jones, Allen & Fuquay, L.L.P.
8828 Greenville Avenue
Dallas, Texas 75243-7143
Attorney for Receivable Finance
   Company, L.L.C.

Mr. Richard Young
Glast, Phillips & Murray, P.C.
2200 One Galleria Tower
13355 Noel Road, L.B. 48
Dallas, Texas 75240-6657
Attorney for Advance Medical Systems &
   Solutions, P.L.L.C., and Marlon D.
   Padilla, M.D., P.A.