**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS—DALLAS DIVISION

CTJ

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, | § |
| ALLSTATE INDEMNITY COMPANY, | § |
| ALLSTATE PROPERTY & | § |
| CASUALTY INSURANCE COMPANY, | § |
| BOSTON OLD COLONY INSURANCE | § |
| COMPANY, and THE GLENS FALL | § |
| INSURANCE COMPANY, | § |
| Plaintiffs/Petitioners, | § |
| vs. | § |
| | § |
| RECEIVABLE FINANCE COMPANY, | § |
| L.L.C., ADVANCED MEDICAL SYSTEMS | § |
| & SOLUTIONS, P.L.L.C., and MARLON | § |
| D. PADILLA, M.D., P.A., ACCIDENT & | § |
| INJURY PAIN CENTERS, INC., (d/b/a | § |
| ACCIDENT & INJURY CHIROPRACTIC), | § |
| ROBERT SMITH, LONE STAR | § |
| RADIOLOGY MANAGEMENT, L.L.C., | § |
| WHITE ROCK OPEN AIR MRI, L.L.C., | § |
| (d/b/a WHITE ROCK OPEN MRI), | § |
| NORTH TEXAS OPEN AIR MRI, L.L.C. | § |
| (d/b/a NORTH TEXAS OPEN MRI, | § |
| HARRIS COUNTY MRI and BEXAR | § |
| COUNTY M.R.I), REHAB 2112, L.L.C., | § |
| METROPLEX PAIN CENTER, INC., | § |
| (d/b/a LONE STAR RADIOLOGY), | § |
| LACIDEM MANAGEMENT, BS | § |
| LIMOUSINE, L.L.C., STEVEN SMITH, | § |
| TINA CHESHIRE, THOMAS RHUDY, | § |
| D.C., LOUIS SAUCEDO, D.C., JEFFREY | § |
| CROCOLL, D.C., KENNETH LUSTIC, | § |
| D.C., MARK RAYSHELL, D.C., LARRY | § |
| PARENT, D.C., CHRISTOPHER | § |
| HOLOWISKI, D.C., CAREY FABACHER, | § |
| D.C., PATRICIA JOHNSON, D.C., | § |
| GHOLAMREZA ASSADOLLAHI, D.C., | § |
| KYLE CAMPBELL, D.C., TAYANA | § |
| STEFANOVIC, D.C., CHAD BLACKMON, | § |
| D.C., RAMESH SANGHANI, D.C., | § |
| MARLON PADILLA, M.D., JAMES | § |
| LAUGHLIN, D.O., DOUGLAS WOOD, | § |
| D.O., DEE MARTINEZ, M.D., and | § |
| MOHAMMAD BORGHEE (d/b/a FAMILY | § |
| CARE PHARMACY), | § |
| Defendants/Respondents. | § |

CIVIL ACTION NO. 3-01CV2247-N

> U.S. DISTRICT COURT
> NORTHERN DISTRICT OF TEXAS
> **FILED**
>
> FEB 1 2 2003
>
> CLERK, U.S. DISTRICT COURT
> By _____
> Deputy

---

MOTION TO DISMISS OF DEFENDANT DOCTORS OF CHIROPRACTIC REGARDING PLAINTIFF'S FIRST AMENDED COMPLAINT AND TO LIMIT DISCOVERY AND BRIEF IN SUPPORT

150

## TABLE OF CONTENTS

I. SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    (A)    Relief Sought By Allstate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    (A)    There Is No Controversy Between Allstate and the Doctors of Chiropractic. . . . . . 4

IV. THIS COURT LACKS SUBJECT MATTER JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . 5
    (A)    Standard for Jurisdictional Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    (B)    Allstate Has Not Alleged $75,000 Against Each Doctor of Chiropractic. . . . . . . . . 7

V. THE "STATUTORY" CLAIMS FAIL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    (A)    These Statutory Claims must Be Dismissed as They Are Inextricably Linked to
           Allstate's Fraud Claim Which Is Not Plead with the Requisite Particularity. . . . . 10
           i.     Allstate's §101.203 Code Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
           ii.    Allstate's §105.002 Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    (B)    Certain Statutes on Their Face are Inapplicable to Movants. . . . . . . . . . . . . . . . . . 12
    (C)    Allstate Has No Standing to Bring its Statutory Claims. . . . . . . . . . . . . . . . . . . . . 12

VI. ALLSTATE HAS NO STANDING TO POLICE THE PRACTICE OF MEDICINE . . . . . . . 16

VII. ALLSTATE FAILED TO PLEAD FRAUD WITH PARTICULARITY . . . . . . . . . . . . . . . . 17
    (A)    Allstate Failed to Plead Fraud With Particularity. . . . . . . . . . . . . . . . . . . . . . . . . . 17

VIII. THE CONSPIRACY AND UNJUST ENRICHMENT CLAIMS MUST BE DISMISSED . . 22

IX. NO CONSPIRACY EXISTS AS A MATTER OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

X. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

XI. PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# INDEX OF AUTHORITIES

Page

**Federal Cases**

*ABC Arbitrage Plaintiffs Group v. Tchuruk, et al.*
291 F.3d 336 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Abrams et al v. Baker Hughes Inc.*
292 F.3d 424 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Anthony v. Security Pacific Fin. Serv. Inc.*
75 F.3d 311 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Chase Manhattan Bank v. Aldridge*
906 F.Supp. 870 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Choate v. United States*
413 F.Supp. 475 (N.D. Okla. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Columbia Gas Transmission Corp. v. Tarbuck*
62 F.3d 538 (3rd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Crouch v. Atlas Van Lines, Inc.*
834 F.Supp. 596 (N.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Dendinger v. Maryland Casualty Co.*
302 F.2d 850 (5th Cir. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Elliott v. Tilton*
89 F.3d 260 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Garcia v. Texas State Board of Medical Examiners*
384 F.Supp. 434 (W.D. Texas 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Laughlin v. K-Mart Corp.*
50 F.3d 871 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*
312 U.S. 270, 273 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Mortensen v. First Federal Savings & Loan Ass'n.*
549 F.2d 884 (3rd Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Quest Medical, Inc. v. Apprill*
90 F.3d 1081 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ramming v. United States*
281 F.3d 158 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Rexford Rand Corp.*
58 F.3d 1215 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Robison v. Caster*
356 F.2d 924 (7th Cir. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Smith v. Vowell*
379 F.Supp. 139 (W.D. Tex. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*
303 U.S. 283 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Suber v. Chrysler Corp.*
104 F.3d 578 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Travelers Ins. Co. v. Obusek*
72 F.3d 1148 (3d Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*U.S. ex rel. Butler v. Magellan Health Services,*
101 F. Supp 2d 1365 (M.D. Fl 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*U.S. ex rel. Clausen v. Laboratory Corp. of Amer., Inc.*
290 F3d 1301 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*
125 F. 3d 899 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

*Wakefield v. State Farm Ins. Co.*
75 F.Supp. 2d 545 (N.D. Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Williams v. WMX Tech, Inc.*
112 F.3d 175 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

*Williamson v. Tucker*
645 F.2d 404 (5th Cir.), *cert. denied*, 454 U.S. 897,
102 S.Ct. 396, 70 L.Ed.2 212 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Wolfer v. Thaler*
525 F.2d 977 (5th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Zucker v. Katz*
708 F.Supp. 525 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**State Cases**

*Attaya M.D. v. M. Shockjeh M.D.*
  962 S.W.2d 237 (Tex. App.–Amarillo 1998, writ denied) ........................... 13

*City of Northlake v. East Justin Jt. Venture*
  873 S.W.2d 413 (Tex. App.—Ft. Worth 1994, writ denied) ........................ 17

*Cole v. Huntsville General Hospital*
  920 S.W.2d 364 (Tex.App.—Houston [1st Dist.]
  1996, writ denied, cert. denied 117 S.Ct. 1312 (1997)) ...................... 2, 13, 16

*Dodson v. Allstate Ins. Co.*
  47 S.W.2d 866 (Ark. 2001) ................................................. 24

*Flynn Brothers, Inc. v. First Medical Associates*
  715 S.W.2d 782 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) ...................... 15

*Fuller Springs v. City of Lufkin*
  513 S.W.2d 17 (Tex. 1974) ................................................ 16

*Laurel Land Memorial Park, Inc. v. Pinto*
  358 S.W.2d 729 (Tex.Civ.App.-Waco 1962, writ ref'd n.r.e.) ...................... 17

*Mulcahy v. Houston Steel Drum Co.*
  402 S.W.2d 817 (Tex.Civ.App.-Austin 1966, no writ) ............................ 17

*Owens v. Allstate Insurance Company*
  996 S.W.2d 207 (Tex.App.—Dallas 1998, writ denied) ........................... 20

*State Farm Mutual Automobile Insurance Company v. Parrish, et al.*
  899 P.2d 285, 288-89 (Colo. 1994)
  (*rehr'g denied* February 9, 1995, *certiorari denied* July 24, 1995) ................ 20, 22

*Stephan v. Baylor Medical Center at Garland*
  20 S.W.3d 880 (Tex. App.–Dallas 2000, no writ) ................................ 13

*Texas Ohio Gas, Inc. v. Mecom*
  28 S.W.3d 129 (Tex.App.—Texarkana 2000, no pet.) ............................ 24

*Thompson v. Texas State Board of Medical Examiners*
  570 S.W.2d 123 (Tex. Civ. App.–Tyler 1978, writ ref'd. n.r.e.). .................... 16

**Statutes**

28 U.S.C. § 1332 ........................................................ 2, 5

28 U.S.C. § 2201 ........................................................ 4, 5

28 U.S.C. §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. §1332(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Rule of Civil Procedure 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 17, 19

Federal Rule of Civil Procedure 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 11, 12, 17, 18, 20, 23, 24

Health and Safety Code §1311.0025 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Tex. Occ. Code Ann. Chapter 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tex. Occ. Code Ann. Chapter 102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tex. Occ. Code Ann. Chapter 105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex. Occ. Code Ann. Chapter 155 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Tex. Occ. Code Ann. Chapter 164 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Tex. Occ. Code Ann. §101.002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tex. Occ. Code Ann. §101.203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13, 14

Tex. Occ. Code Ann. §101.204 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tex. Occ. Code Ann. §101.251 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tex. Occ. Code Ann. §101.252 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tex. Occ. Code Ann. §102.001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tex. Occ. Code Ann. §102.008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tex. Occ. Code Ann. §102.009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tex. Occ. Code Ann. §102.010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tex. Occ. Code Ann. §105.002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Tex. Occ. Code Ann. §105.002(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex. Occ. Code Ann. §105.002(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Tex. Occ. Code Ann. §105.002(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex. Occ. Code Ann. §164.001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Tex. Occ. Code Ann. §165.051 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Tex. Occ. Code Ann. §165.159 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Texas Medical Practices Act, Article 4495(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, *et al.,* | § § § | |
| Plaintiffs/Petitioners, | § § | |
| vs. | § § | CIVIL ACTION NO. 3-01CV2247-N |
| RECEIVABLE FINANCE COMPANY, *et al.,* | § § § | |
| Defendants/Respondents. | § § | |

**MOTION TO DISMISS OF THOMAS RHUDY, D.C., LOUIS SAUCEDO, D.C., KENNETH LUSTIK, D.C., MARK RAYSHELL, D.C., LARRY PARENT, D.C., CHRISTOPHER HOLOWISKI, D.C., CAREY FABACHER, D.C., PATRICIA JOHNSON,D .C., REZA ASSADOLLAHI, D.C., KYLE CAMPBELL, D.C., TAYANA STEFANOVIC, D.C., CHAD BLACKMON, D.C., AND RAMESH SANGHANI, D.C., TO PETITIONERS' FIRST AMENDED COMPLAINT AND TO LIMIT DISCOVERY AND BRIEF IN SUPPORT THEREOF**

NOW COME Defendants, Thomas Rhudy, D.C., Louis Saucedo, D.C., Kenneth Lustik, D.C. (erroneously named herein as "Kenneth Lustic, D.C."), Mark Rayshell, D.C., Larry Parent, D.C., Christopher Holowiski, D.C., Carey Fabacher, D.C., Patricia Johnson, D.C., Reza Assadollahi, D.C. (erroneously named herein as "Gholamreza Assadolahi, D.C."), Kyle Campbell, D.C., Tayana Stefanovic, D.C., Chad Blackmon, D.C., and Ramesh Sanghani, D.C. (collectively, the "Doctors of Chiropractic"), and file this their Motion to Dismiss the First Amended Complaint ("Complaint") of Allstate Insurance Company, Allstate Indemnity Company, Allstate Personal Property & Casualty Company, Boston Old Colony Insurance Company and The Glens Fall Insurance Company (collectively, "Allstate") and to Limit Discovery and Brief in Support Thereof, and in support of such would show unto the Court as follows:

### I. SUMMARY OF ARGUMENT

1.      This Court lacks subject matter jurisdiction over the subject matter of Allstate's Complaint and as a result, the Complaint should be dismissed. Further, such Complaint fails to state a claim against the moving Defendants upon which relief can be granted and should be dismissed with prejudice under Rule 12(b)(6) and for not pleading with particularity as required by Rule 9(b). The Complaint should be dismissed for the following reasons:

---

(a)     No controversy exists between the Doctors of Chiropractic and Allstate as required by the Declaratory Judgment Act;

(b)     Lack of subject matter jurisdiction exists as the amount in controversy against each of the doctors of chiropractic does not exceed $75,000 as required by 28 U.S.C. § 1332;

(c)     Failure to state a claim under Rule 12(b)(6) as no private cause of action exists under the Texas Occupations Code and Allstate has no standing to assert the alleged statutory violations of the Code. *Cole v. Huntsville General Hospital*, 920 S.W.2d 364, 372-73 (Tex.App.—Houston [1st Dist.] 1996, writ denied, cert. denied 117 S.Ct. 1312 (1997));

(d)     Failure to plead fraud with the requisite particularity of Rule 9(b) which includes dismissal of the fraud, conspiracy, and unjust enrichment claims (which all sound in fraud); and

(e)     The Doctors of Chiropractic cannot be liable for conspiracy as a matter of law as they were merely employees of the corporate Defendants, received no financial benefit from the alleged acts, and a corporation cannot conspire with itself.

## II. **PARTIES**

2.      Plaintiffs have sued thirty-five (35) Defendants alleging that they have conspired to commit healthcare fraud.

3.      All of the movants herein are doctors of chiropractic and are or were salaried employees of Accident & Injury Pain Centers, Inc. ("A&I"). These doctors (except Dr. Lustik) only receive salary from A&I, not any of the other Defendants.

4.      Receivable Finance Company ("RFC") is owned by Robert Smith, and is a factoring company which between January, 1999, and February, 2001, purchased the receivables of Marlon D. Padilla, M.D. and/or his professional association and other medical doctors, and/or doctors of osteopathy who are all duly licensed in the State of Texas.

5.      Robert Smith also owns A&I which employs or employed the individual chiropractors named as defendants herein. Robert Smith also owns Lone Star Radiology Management, L.L.C., which is a company that provides readings of x-rays and MRI's. Robert Smith also owns White Rock Open Air MRI, L.L.C. (d/b/a White Rock Open MRI), North Texas Open Air MRI, L.L.C. (d/b/a North Texas Open MRI, Harris County

MRI and Bexar County M.R.I.), Rehab 2112, L.L.C., Metroplex Pain Center, Inc. (d/b/a Lone Star Radiology), Lacidem Management, and BS Limousine, L.L.C.  All of these entities (except the last one) offer services which from time to time may be used by patients who are seen by chiropractors at the A&I chiropractic centers.

6.      Plaintiffs have also sued Steven Smith, who is the brother of Robert Smith, and who is employed by A&I as a vice president.  Tina Cheshire has also been sued.  She is an employee of A&I as head of its collections department.

7.      Plaintiffs have also sued Marlon Padilla, M.D. (and his professional associations), James Laughlin, D.O., Douglas Wood, D.O. and Dee Martinez, M.D., who are either licensed medical doctors or doctors of osteopathy.  Drs. Padilla, Laughlin, Wood and Martinez will, from time to time, be collectively referred to herein as the "Medical Doctors."

8.      Finally, Plaintiffs have sued Mohammad Borghee (d/b/a Family Care Pharmacy).

9.      Plaintiffs allege that Defendants have collectively entered into a common law conspiracy (Complaint, Section XVIII) or have joined in a single business enterprise (Complaint, Section XV) generally for the purpose of inducing Plaintiffs to pay false medical claims.

10.     Plaintiffs' substantive claims fall into two categories: alleged statutory violations of the Texas Occupations Code (Complaint, Section XVI) and a common law fraud claim (Complaint, Section XVII).

11.     To the extent Plaintiffs are seeking relief against the Doctors of Chiropractic for alleged statutory violations, such claims should be dismissed as to the Movants because, on their face, the majority of such statutes are inapplicable to chiropractors.  Additionally, no private cause of action exists under the Code. Further, Plaintiffs have no standing to bring claims under those sections.  Moreover, even if Plaintiffs had standing, most of those sections only govern the practice of medicine by **physicians**, and the Doctors of Chiropractic neither employ physicians nor practice medicine as governed by those sections of the Code cited by Plaintiffs.  There are no allegations that the chiropractors are practicing medicine.

12. Further, Plaintiffs' common law fraud claims (including conspiracy and unjust enrichment, which sound in fraud) fail under Rule 9(b) as they are not plead with sufficient particularity.

13. Finally, the Doctors of Chiropractic cannot be liable for conspiracy as a matter of law.

**(A)** **Relief Sought By Allstate**

14. Although not entirely clear from the face of their complaint, the Plaintiffs appear to be seeking monetary judgment against all Defendants for common law fraud, conspiracy and unjust enrichment. Additionally, Allstate seeks a declaration that Defendants (including the Doctors of Chiropractic) have violated numerous provisions of the Code concerning the practice of healthcare. (Complaint ¶209). Further, Plaintiffs seek certain declarations including a sweeping declaration that Plaintiffs are not obligated to pay any amount billed, by or though A&I and/or the other corporate Defendants and that Plaintiffs are entitled to reimbursement for any such payments ever made by them (Complaint ¶211).

## III. ARGUMENT AND AUTHORITIES

**(A)** **There Is No Controversy Between Allstate and the Doctors of Chiropractic.**

15. Allstate seeks relief under the Federal Declaratory Judgment Act, which does not create an independent cause of action. 28 U.S.C. § 2201. The existence of an actual case or controversy is a condition precedent for a declaratory judgment action. *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1153 (3d Cir.1995); *Choate v. United States*, 413 F.Supp. 475, 478 (N.D. Okla. 1976). Such relief is available only when there is an actual, substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issue of a declaratory judgment. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. *Travelers*, 72 F.3d at 1153. A declaratory judgment action should only be entertained when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue.

---

16.     The premise of declaratory relief is the constitutional and statutory command that it only be utilized in actual cases and controversies. In each case, the court must determine if the facts alleged under all the circumstances show there is a substantial controversy between adverse parties seeking specific relief through a decree conclusive in character, as distinguished from an advisory opinion, to warrant the issuance of a declaratory judgment. *Wolfer v. Thaler*, 525 F.2d 977, 978 (5th Cir. 1976); *Smith v. Vowell*, 379 F.Supp. 139, 162 (W.D. Tex. 1974).

17.     Allstate's complaint fails to set forth any actual and substantial controversy between Allstate and the individual Doctors of Chiropractic, which is a condition precedent for a declaratory judgment action.

18.     Allstate essentially is seeking an advisory opinion regarding certain sections of the Occupations Code and the validity of certain contracts to which it is not a party. While Allstate may appreciate an advisory opinion in regard to the issues presented regarding the Texas Occupations Code, this case does not present a justifiable controversy proper for determination by this court under 28 U.S.C. § 2201. *Choate*, 413 F.Supp. at 475. Therefore, because declaratory relief is not available, this portion of the complaint should be dismissed as to the Doctors of Chiropractic. *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

## IV. THIS COURT LACKS SUBJECT MATTER JURISDICTION

19.     The only jurisdictional basis for this Complaint claimed by Allstate is pursuant to 28 U.S.C. §1332(a). (Complaint, ¶5).

20.     This Court's jurisdiction is limited to cases arising under the United States Constitution, federal law or cases involving diversity of citizenship. *See* 28 U.S.C. §§1331, 1332. In this case, it is clear that the Court lacks jurisdiction over this dispute because the suit does not give rise to either a federal question or to diversity jurisdiction as the amount in controversy does not exceed $75,000 against each individual Doctor of Chiropractic, excluding interest, costs and attorneys' fees as required by 28 U.S.C. §1332.

**(A)** **Standard for Jurisdictional Review.**

21.     The standard for determining whether a plaintiff's claims satisfy the amount in controversy was set out by the United States Supreme Court in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938). The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. *Id.* at 289.

22.     In applying the "legal certainty" test established by *St. Paul Mercury*, courts have ruled that, if it is apparent to a legal certainty from the face of the pleadings or after proof has been given that the plaintiff cannot recover the jurisdictional amount, the suit should be dismissed. *St. Paul Mercury*, 303 U.S. at 288-89; *Laughlin v. K-Mart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

23.     While courts generally accept a plaintiff's good faith allegation of the amount in controversy as contained in the complaint, where a defendant or the court challenges the plaintiff's allegations regarding the amount in question, the plaintiff who seeks the assistance of the federal courts must produce sufficient evidence to justify its claims. *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3rd Cir. 1995).

24.     The facial attack (on subject matter jurisdiction) does offer similar safeguards to the petitioners (as a Rule 12(b)(6) motion) such as the court must consider the allegations of the complaint as true. "The factual attack, however, differs greatly for because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to petitioners' allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictions claims." *Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977). The distinction between factual Rule 12(b)(1) motions and

factual Rule 12(b)(6) motions is "rooted" in the unique nature of the jurisdictional question. A district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached. *Williamson*, 645 F.2d at 413.

25.    Allstate has not alleged sufficient facts that evidence the amount in controversy exceeds $75,000 excluding interests and costs. The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). If a petitioner's allegation of the amount in controversy is challenged, Allstate, who is seeking the assistance of this federal court, must produce sufficient evidence to justify its claims and must support its contention with competent proof, i.e., a reasonable probability that jurisdiction exists. *Anthony v. Security Pacific Fin. Serv. Inc.*, 75 F.3d 311, 315 (7th Cir. 1996). Competent proof means "proof to a reasonable probability that jurisdiction exists." *St. Paul Mercury*, 303 U.S. at 591; *Rexford Rand Corp.*, 58 F.3d 1215, 1218 (7th Cir. 1995).

26.    This Court is not limited to a consideration of the allegations of the complaint in deciding whether subject matter jurisdiction exists. *Ramming*, 281 F.3d at 161; *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2 212 (1981). The court may consider undisputed facts evidenced in the record as well as conflicting evidence and decide for itself the factual issues that determine jurisdiction. *Ramming*, 281 F.3d at 161; *Williamson*, 645 F.2d at 413. Prior to dismissal, the plaintiff should be provided an opportunity to present facts by affidavit, deposition or in an evidentiary hearing to prove its amount in controversy and defendants an opportunity to contest such. *Suber v. Chrysler Corp.*, 104 F.3d 578, 584 (3d Cir. 1997).

**(B)    Allstate Has Not Alleged $75,000 Against Each Doctor of Chiropractic.**

27.    The only assertion of the amount in controversy in the 65-page Complaint is found on page 62 where Allstate attempts to create jurisdiction for this Court where none exists. Although the numbers set forth on page 62 are greater than $75,000.00, nowhere in the voluminous Complaint does Allstate allege it **paid** the

Doctors of Chiropractic (or the other Defendants) anything. The only reference to the amount in controversy is in ¶ 213 wherein Plaintiffs state:

> "in the period from January 1, 1999 to the present, at least the following sums of chiropractic, medical, diagnostics, and other related billings were submitted by Defendants to Plaintiffs concerning A&I patients."

The individual Doctors of Chiropractic do not submit any bills, are salaried employees, and have not ever been paid any monies by Allstate, all of which opposing counsel has learned during many depositions such as the ones cited in the Amended Complaint. Plaintiffs never address how this could be a single business enterprise when the Doctors of Chiropractic are all salaried employees.

28.     Allstate must satisfy the jurisdictional amount with respect to each Defendant and cannot aggregate against individual defendants to reach this amount. *Dendinger v. Maryland Casualty Co.*, 302 F.2d, 850, 851 (5th Cir. 1962); *Crouch v. Atlas Van Lines, Inc.*, 834 F.Supp. 596, 604 (N.D.N.Y. 1993). It is immaterial that the claims are transactionally related or that they arise from a common origin. Aggregation is allowed only when the defendants' liability to the plaintiff is common, undivided, or joint, which this clearly is not. *Chase Manhattan Bank v. Aldridge*, 906 F.Supp. 870, 874 (S.D.N.Y. 1995). Allstate seeks a declaration that the corporate Defendants constitute a joint business enterprise, but there are no such allegations against the individual Doctors of Chiropractic which would make any liability joint, common or undivided.

29.     Allstate conveniently does not address what portion, if any, of these alleged billings were ever paid by Allstate and, if so, to whom. Unless the amounts assessed were ultimately paid by Allstate or constitute currently pending claims against Allstate (not barred by the statute of limitations), the number of patients seen—and the total amounts allegedly billed by the other Defendants is wholly irrelevant to this jurisdictional threshold issue.

30. Plaintiffs' "contention" of the amount in controversy, unsupported as it is by any competent evidence as to sums actually paid by Plaintiffs to any Defendants, much less to the Doctors of Chiropractic, falls short of vesting this Court with jurisdiction. Plaintiffs make no distinction between first- and third-party claims in the Complaint. Plaintiffs have not identified even a single claim, be it first- or third-party, on which Allstate made payment, or which has been filed by any Defendant against any Plaintiff which remains outstanding, nor have they identified a single patient. Instead, Plaintiffs have not even attempted to assert that Allstate made payment on enough of these accounts to exceed the amount in controversy or even involve third-party claims against Allstate's insureds. Plaintiffs never address the amounts actually paid by Allstate or any outstanding claims the Defendants have asserted against Allstate.

31. Magistrate Judge Sanderson's Report and Recommendation adopted by this Court appears to limit Allstate's recovery to any claims paid on behalf of its own insureds. *See* Report p. 3 (Petitioner "does not seek . . . a declaratory judgment with respect to all billings for medical services rendered to third parties. . .." *Emphasis in original*.)[1] However, it appears Plaintiffs are still seeking a global declaration that they do not have to pay any amount billed by or through any of the Defendants and are entitled to reimbursement for any such money previously paid (Complaint ¶211). Plaintiffs make no distinction between first- and third-party claims in their pleadings.

32. Because the Doctors of Chiropractic have challenged the amount in controversy as to them, Allstate must now produce sufficient evidence to justify its claim with competent proof. The Motion calls into question the very authority of this Court to hear this matter; therefore, pending a resolution of this Motion, discovery in this matter should be limited only to jurisdictional discovery pertaining to the amount in

---

[1] The Ruling was January 25, 2002, on Defendant, Receivable Finance Company, L.L.C.'s Motion to Dismiss for Lack of Standing.

controversy. No discovery should be allowed by Allstate as none is necessary, because any facts establishing the amount in controversy as to each Defendant are already in (if not exclusively in) the possession of each Plaintiff.

33.    Because it is undisputed Allstate's case does not involve a federal question and because the amount in controversy sought by each Petitioner does not exceed $75,000 exclusive of attorneys' fees and costs, this Court lacks subject-matter jurisdiction and the Complaint should be dismissed. If necessary, discovery should be limited to evidence related to this amount in controversy prior to dismissal determination.

## V. THE "STATUTORY" CLAIMS FAIL

34.    Allstate's "statutory" claims against the Doctors of Chiropractic fail either because:

      (a)     They are inextricably linked to the fraud claims; or
      (b)     They do not apply to chiropractors; and
      (c)     Allstate lacks standing to sue and no private cause of action exists.

35.    Allstate seeks a declaration that the Doctors of Chiropractic and clinic directors have violated numerous provisions of the Code concerning the providers of healthcare. (Complaint, ¶209). However, a majority of the cited provisions are clearly inapplicable to chiropractors.

**(A)    These Statutory Claims must Be Dismissed as They Are Inextricably Linked to Allstate's Fraud Claim Which Is Not Plead with the Requisite Particularity.**

**i.    Allstate's §101.203 Code Claim.**

36.    Section 101.203 of the Code incorporates Section 1311.0025 of the Health and Safety Code, which provides that a health care professional may not submit to a third-party payor a bill for treatment that the professional knows was improper, unreasonable or medically or clinically unnecessary. In a conclusory fashion, Allstate alleges that many of the Defendants (including the Doctors of Chiropractic) have submitted bills for medical and/or chiropractic treatment and diagnostic evaluations that the defendants knew were improper, unreasonable or medically or clinically unnecessary (Complaint, ¶ 137). However, Allstate fails to identify a single bill that was false or specifically explain why any given bill may have been false. As set forth

above, the doctors do not submit bills. The individual Doctors of Chiropractic are left to guess the identity of the allegedly false bills and guess why Allstate claims they are false. These kinds of generalized/ conclusory statements do not meet the requirements of Rule 9(b).

37.     Further, Allstate alleges that it would:

"show the treatment and referrals between these Defendants was based on enriching the common enterprise between these Defendants rather than on reasonableness and necessity of treatments and diagnostic tests . . .. Due to these inter-relationships, virtually all patients are referred for second opinion x-ray review, MRIs and second opinion medical consultation." (Complaint, ¶ 138).

Once again, Allstate fails again to identify a single patient or fraudulent bill. Allstate does not even allege that all such referrals were medically unnecessary.

38.     Next, Allstate alleges that the Doctors of Chiropractic "facilitate the improper, unreasonable, and unnecessary billings by ascribing their names to HCFA-1500 forms or by allowing their names to be ascribed on the forms." Allstate fails to allege the identity of a single patient who received such treatment or why, in the case of any such treatment, the treatment was inappropriate or medically unnecessary, and fails to produce one such HCFA form. (Complaint, ¶ 139).

39.     In paragraph 140, Allstate alleges that chiropractic costs are inflated through the use of CPT codes without bothering to identify a single patient whose treatment was improperly coded for the purpose of enhancing the amount of the claim.

40.     It is clear that Allstate's claim under Code § 101.203 is nothing more than a variation of its fraud claim. As set forth below in Section VII, the case law is clear. Fraud must be plead with particularity. Allstate has not plead billing fraud with the particularity required to meet the requirements of Rule 9(b).

ii.    **Allstate's §105.002 Claims.**

41.    Allstate also alleges that Defendants have conspired to violate Section 105.002 of the Code, specifically Section 105.002(a)(2), which prohibits a healthcare provider from submitting false or fraudulent claims under an insurance policy.

42.    Allstate asserts that the Doctors of Chiropractic have violated §105.002 by billing "charges for treatment, examinations, services and diagnostic tests that were not reasonable or necessary" and for producing or causing to be produced various reports, itemized billing statements and HCFA-1500 forms. (Complaint, ¶ 154). Such assertion is nothing more than a naked conclusion. Again, Allstate fails to identify a single patient, single bill or HCFA-1500 form in support of these assertions.

43.    Paragraph 155 of the Complaint includes the same allegation except for an assertion that certain chiropractors allow their names to be used when they did not personally treat the patients, thus somehow assisting in the perpetration of the alleged billing fraud. Once again, neither a single patient or bill is identified, nor a specific instance of a chiropractor is incorrectly identified as treating a patient is specified. Therefore, the pleading fails for a lack of specificity under the requirements of Rule 9(b).

**(B)    Certain Statutes on Their Face are Inapplicable to Movants.**

44.    Chapter 155 of the Code deals with the licensing of individuals to practice medicine by the Board of Medical Examiners which clearly does not involve the individual Doctors of Chiropractic. Likewise, Chapter 164 is inapplicable to Movants as it only deals with disciplinary actions and procedures relating to the licensing of physicians. Allstate makes no allegations that Movants are engaged in the practice of medicine.

**(C)    Allstate Has No Standing to Bring its Statutory Claims.**

45.    All of the statutes cited by Allstate are licensing and/or disciplinary statutes where the disciplinary authority exists in the governing board of the profession, the attorney general or in some cases, county and district attorneys. That proposition is manifest on the face of the statutes under which Allstate

asserts its claims. Further, to the extent there is applicable case law, the case law supports the proposition that the statutes under which Allstate relies do not create a private cause of action. *Cole*, 920 S.W.2d at 372-373.

46.    The *Cole* case involved a dispute regarding Dr. Cole's hospital privileges. The doctor sought to bring a claim under certain sections of Article 4495(b) of the Act:

> Similar to the Hospital Licensing Act, the Medical Practice Act is enforced through criminal penalties and through administrative regulation. The Act defines unlawful and prohibited practices and provides criminal penalties for a person practicing medicine in violation of the Act (citation omitted). The Act also defines the grounds for revocation and suspension of a license by the board, sets forth the charging and hearing process to be followed by the board, and lists the methods of discipline available to the board (citation omitted). The Act also authorizes the attorney general to file an action to recover a civil penalty from a person in violation of the Act (citation omitted).
>
> Employing the same reasoning above, **we find that the legislature did not intend a private cause of action under the Act**. We find the trial court did not err by refusing to graft a private cause of action for Cole into the act. [Emphasis supplied]. *Cole*, 920 S.W.2d at 372-73.

Other Texas courts also held that the Code did not create a private cause of action. *Stephan v. Baylor Medical Center at Garland*, 20 S.W.3d 880, 886 (Tex. App.–Dallas 2000, no writ); *Attaya M.D. v. M. Shockjeh M.D.*, 962 S.W.2d 237, 239 (Tex. App.–Amarillo 1998, writ denied).

47.    Although defendants could find no standing case specifically addressing the recodification of the Act in the Code, there is no reason to believe that the legislature intended to create a private cause of action when the recodification was accomplished. If the legislature had so intended, the Code would have been written to include a provision creating a private cause of action. *Quest Medical, Inc. v. Apprill*, 90 F.3d 1081, 1091 (5th Cir. 1996). It was not.

48.    Section 101.203 of the Code is found within Chapter 101 entitled "Health Professions Council", and governs non-physician health professions. These sections are akin to the provisions set forth in Chapter 155 and 164 governing medical doctors in that they govern non-physician healthcare providers such as chiropractors, which chiropractors are governed by the Texas Board of Chiropractic Examiners, §101.002.

49.     Allstate asserts that it has a private cause of action under §101.203 which prohibits overcharging or over treating patients. However, Chapter 101 does not create a private cause of action. Rather, Chapter 101 provides grounds for license revocation of healthcare providers (including chiropractors), one of which grounds is set forth in §101.203. §101.204 provides that the remedy for a violation of a provision of Chapter 101 is revocation or denial of a license. Moreover, Chapter 101 provides that violators may be subject to civil penalties under §101.251 or injunction under §101.252. However, the power to seek either a civil penalty or an injunction is vested in the attorney general. Chapter 101 does not provide for a private cause of action either directly or by implication. Rather as the Act did it sets forth the grounds for the suspension of a license by a healthcare provider and lists the methods of discipline available for a violation of Chapter 101. As the Act did, Chapter 101 defines the grounds for the revocation of a healthcare provider's license and lists the methods of discipline available to the governing board and/or the attorney general. It simply does not provide for a private cause of action.

50.     Allstate also claims a cause of action under Code §102.001 (prohibiting solicitation) which is contained within Chapter 102 governing healthcare professionals. However, there is still no private cause of action under that statute. Chapter 102 provides only for disciplinary action by the governing board of the particular healthcare discipline involved (§102.008) and also provides for injunctive relief (at §102.009) and civil penalties (at §102.010). The power to seek injunction or civil penalties is vested exclusively in the attorney general or the appropriate district or county attorney. Chapter 102 does not specifically or indirectly create a private cause of action. Like the other Chapters discussed herein, Chapter 102 delineates certain prohibited behavior and the process available to police and punish the behavior. Chapter 102 does not license private individuals such as Allstate to police the prohibitions in the Chapter. The Chapter provides who may do the policing and Allstate is not one of the listed policemen.

51.     Allstate also alleges a violation of Code §105.002(a) which provides that a healthcare provider is prohibited from making false or fraudulent claims under an insurance policy. §105.002(b) provides that in addition to other provisions of civil and criminal law, the commission of unprofessional conduct under subsection (a) constitutes a cause for the revocation or suspension of a provider's license or other disciplinary action. The other civil or criminal law is not further defined within Chapter 105. However, the Chapter 105 does not provide for a private cause of action.

52.     Allstate has contended that the courts have implicitly sanctioned a private cause of action relying on *Flynn Brothers, Inc. v. First Medical Associates* 715 S.W.2d 782 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). However, such argument fails. In *Flynn*, two brothers, who were not licensed to practice medicine, formed a partnership with a licensed physician, Dr. Adcock. *Id.* at 783. This partnership was awarded a contract to staff the emergency department of a hospital. After the contract was obtained, both the Flynns and Dr. Adcock became aware the contract was invalid under the Texas Medical Practices Act. *Id.* In an effort to meet the strictures of the Act, Dr. Adcock formed a professional corporation, FMA, which became the contracting party with the hospital. The Flynns formed a corporation, FBI, which entered into an exclusive management agreement under which FBI administered the hospital contract. *Id.* The Flynns and Dr. Adcock "admit[ted] that the whole contractual scheme was developed to do indirectly that which they freely conced[ed] they could not do directly under the Medical Practices Act." *Id.* at 785. The plaintiff, Flynn Brothers, Inc., then proceeded to sue the medical doctor defendant under the alleged oral partnership. The medical doctor defendant responded by arguing that the partnership was illegal under Article 4495(b), and was thus unenforceable. The court agreed. The point of the case was a **party** to the contract may seek to invalidate it if illegal. The case does not hold that strangers to a contract may invalidate it.

53.     The *Flynn* case does not hold that the Act created a private cause of action. The holding in the *Flynn* case is limited to the propositions (i) that a contract which is intended to violate or violates the Act is

illegal, and (ii) that such illegality can be imposed as a defense to the enforceability of the contract by one party to the contract against another party to the contract.

54.     Under the holdings of *Cole* and its progeny, there is no private cause of action under the Texas Medical Practices Act as incorporated in the Code.

## VI.  ALLSTATE HAS NO STANDING TO POLICE THE PRACTICE OF MEDICINE

55.     A review of the statutes under which Allstate has made claims demonstrates why Allstate has no standing to bring those claims.

56.     The police power of the state includes the power to enact comprehensive, detailed, and rigid regulations for the practice of medicine.  The right of the state to regulate such basic service is unchallenged in our society.  *Garcia v. Texas State Board of Medical Examiners*, 384 F.Supp. 434, 436 (W.D. Texas 1974); *Thompson v. Texas State Board of Medical Examiners*, 570 S.W.2d 123, 128 (Tex. Civ. App.–Tyler 1978, writ ref'd. n.r.e.).  Therefore, Allstate has no standing to usurp the role of the Texas Attorney General and others designated by statute to police the practice of medicine.

57.     As set forth above, the Act is clear that it does not provide for a private cause of action.  The Act specifically provides the Texas State Board of Medical Examiners is the entity to enforce and police the practice of medicine with the Attorney General representing the Board in court proceedings.  Tex. Occ. Code §164.001 to §165.159.  In addition to certain penalties, the Board has the powers to enjoin any violations of the Act.  § 165.051.

58.     Allstate is essentially attempting to become a "*de facto*" attorney general and regulate the complained of statutes.  Allstate is contending that the defendants are exercising power not granted by law, in violation of the Code.  This type of an action contesting this corporation's activities is in the nature of *quo warranto*.  Such proceedings can only be brought in the name of the attorney general and are intended to protect the interests of the public and not for the purpose of enforcing private rights.  See *Fuller Springs v. City*

*of Lufkin*, 513 S.W.2d 17, 18 (Tex. 1974); *City of Northlake v. East Justin Jt. Venture*, 873 S.W.2d 413, 416 (Tex. App.—Ft. Worth 1994, writ denied); *Mulcahy v. Houston Steel Drum Co.*, 402 S.W.2d 817, 820 (Tex.Civ.App.-Austin 1966, no writ); *Laurel Land Memorial Park, Inc. v. Pinto*, 358 S.W.2d 729, 731 (Tex.Civ.App.-Waco 1962, writ ref'd n.r.e.).

59.     Finally, as set forth above, Allstate's "statutory" claims, are now inextricably tied to Allstate's fraud claim which must be dismissed under Rule 9(b) as set forth below.  Therefore, Allstate's "statutory" claims also fail as being derivative of its fraud claims.

## VII. ALLSTATE FAILED TO PLEAD FRAUD WITH PARTICULARITY

60.     Allstate has failed to plead with particularity.

**(A)     Allstate Failed to Plead Fraud With Particularity.**

61.     Rule 9(b) specifically provides that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake <u>shall be stated with particularly</u>."  (emphasis added).  In order to meet the requirements of Rule 9(b), plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made and explain why the statements were fraudulent." *Williams v. WMX Tech, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2nd Cir. 1993).  In summary, Rule 9(b) requires Allstate to plead the "who, what, when and where . . ." of the alleged fraud before access to the discovery process is granted.  *Id.* at 179.  As to the Doctors of Chiropractic, Allstate has wholly failed to so plead.

62.     In several recent health care cases alleging fraud, defendants' Rule 12(b)(6) motions to dismiss based on the plaintiffs' failure to plead with particularity under Rule 9(b) were sustained.  *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F. 3d 899, 903 (5th Cir. 1997); *U.S. ex rel. Butler v. Magellan Health Services*, 101 F. Supp 2d 1365, 1369 (M.D. Fl 2000); *see also U.S. ex rel. Clausen v. Laboratory Corp. of Amer., Inc.* 290 F3d 1301, 1311 (11th Cir. 2002)(Rule 9(b) does not permit plaintiff merely

to describe private scheme without any stated reason for his belief). As in those cases cited, Plaintiffs "merely

allege a scheme of fraud, and not specific occurrences or facts which support this general scheme." *Magellan*,

101 F.Supp. at 1368.

63.     The court, in *Clausen*, further states:

> "Rule 9(b) requires that allegations of fraud include: (1) precisely
> what [false or fraudulent] statements were made in what documents or oral
> representations or what omissions were made, and (2) the time and place of
> each such statement and the person responsible for making (or, in the case of
> omissions, not making) same, and (3) the context of such statements and the
> manner in which they misled the Plaintiff, and (4) what defendants obtained
> as a consequence of the fraud."

> *Clausen*, 290 F.3d at 1310; *also see, Magellan*, 101 F.Supp. at 1369.

64.     Upon dismissing the plaintiff's claims, the *Magellan* court determined, "Plaintiff has plead no

facts relating to the content of any false claims or the manner in which they were submitted. Finally, Plaintiff

fails to plead what the Defendants received specifically as a result of the fraud." *Id.* at 1369. Allstate has

failed to plead any such facts.

65.     This Complaint is nothing more than a continuation of Allstate's fishing expeditions embarked

upon in multiple state courts, which expeditions are prohibited by Rule 9(b). *Magellan*, 101 F.Supp. at 1368.

66.     The Complaint should be dismissed with prejudice as any further opportunity to amend would

be futile. *Clausen,* 290 F.3d at 1312.

> " . . . *Clausen* merely offers conclusory statements, and does not adequately
> allege when–or even if–the schemes were brought to fruition. He merely
> alleged that 'these practices resulted in the submission of false claims for
> payment to the United States.' No amounts of charges were identified. No
> actual dates were alleged. No policies about billing or even second-hand
> information about billing practices were described, other than to state that
> electronic HCFA Form 1500s with medical test codes were used. No copy of
> a single bill or payment was provided." *Id.*

67.     Further, the amended complaint should be dismissed to protect the Doctors of Chiropractic

from further "unfounded accusations of immoral or otherwise wrongful conduct." *Id.* Under this circuit's case

law, at a minimum, Allstate is required to plead the "who, what, when and where and how" of the alleged fraud, when asserting a fraud claim. *Williams v. WMX Tech, Inc.*, 112 F.3d 175, 179 (5th Cir. 1997). With regard to the individual Doctors of Chiropractic, Allstate has wholly failed to allege the "who, what, when, where and how" of its alleged fraud.

68.     The Fifth Circuit in two recent decisions held that fraud claims made under Rule 10(b)(5) of the Securities Exchange Act were properly dismissed under a 12(b)(6) motion for Plaintiffs' failure to plead fraud with the requisite particularity. *ABC Arbitrage Plaintiffs Group v. Tchuruk, et al.*, 291 F.3d 336 (5th Cir. 2000); *Abrams et al v. Baker Hughes Inc.*, 292 F.3d 424 (5th Cir. 2002).

69.     The *Abrams* court, in discussing the plaintiffs' securities' fraud claim, held that:

> This court's recent decision in *Nathenson v. Zonagen Inc.* sets the standard of pleading required after the enactment of the PSLR. That case, which first applied the PSLR in this circuit, held that "in order to survive a motion to dismiss, a plaintiff alleging a section 10(b)/Rule 10b-5 claim must now plead specific facts giving rise to a 'strong inference' of scienter." . . . Allegations of motive and opportunity, standing alone, are no longer sufficient to plead a strong inference of scienter, although appropriate allegations of motive and opportunity may enhance other allegations of scienter. Circumstantial evidence can support a strong inference of scienter. *Zonagen* also establishes that the effect of the PSLR, "*at a minimum*, incorporates the standard for pleading fraud under Fed. R. Civ. P. 9(b). This circuit interprets Rule 9(b) strictly, requiring the plaintiff "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." (emphasis added)

> *Abrams*, 292 F.3d at 430.

70.     Plaintiffs apparently allege in a wholly global and conclusory fashion that the healthcare services provided by all defendants (both old and new) were medically unnecessary. There are no specific allegations against the Doctors of Chiropractic regarding fraud. Other than outlining certain alleged business relationships and speculating that from such relationships fraud can be inferred, Plaintiffs provide no factual basis for their assertions that billings were submitted for medically unnecessary services. *See, Columbia/HCA Healthcare Corp.*, 125 F. 3d at 903. In *Columbia/HCA Healthcare*, the Movant's complaint was dismissed

because he provided no factual basis for his belief that defendant submitted claims for medically unnecessary services other than a reference to statistical studies which the court found did not directly implicate defendants. The court further determined the allegations amounted to nothing more than speculation. *Id.* at 903. Likewise, Allstate's allegations are mere speculation and the Complaint should be dismissed.

71.     With the volume of health-care related bills mentioned by Plaintiffs, it is important to note that **not one** patient is specifically identified.  How can a defense be presented when no patients or bills are specified?  This Complaint thwarts both the letter and the spirit of Rule 9(b).  In effect, Plaintiffs want the Court to try or re-try the chiropractic care aspect of thousands of previously resolved or pending (in state court) car wreck cases without having to identify any of the specifics of the alleged fraud or without joining as a party the injured person who has actually made a claim against an Allstate insured.  Not only is there no specificity, there is a failure to name indispensable parties, *i.e.*, the injured persons who have made the claims against Allstate's insureds.  This requested approach would give Allstate a "second bite at the apple" to avoid liability. *Owens v. Allstate Insurance Company*, 996 S.W.2d 207 (Tex.App.—Dallas 1998, writ denied).

72.     In a similar case, the Colorado Court of Appeals dismissed State Farm's claims against a chiropractor for fraud in connection with payment of claims for failing to plead fraud with particularity. *State Farm Mutual Automobile Insurance Company v. Parrish, et al.*, 899 P.2d 285, 288-89 (Colo. 1994) (*rehr'g denied* February 9, 1995, *certiorari denied* July 24, 1995).  While the case is not controlling, the result is consistent with the holdings in *Thompson, Butler* and *Clausen*.  The *Parrish* court's holding reads as if it were written after analyzing Allstate's Amended Complaint in this case.  The court noted Colorado Rule 9 is the same wording and is taken from Federal Rule 9 and found as follows:

> The ninth claim for relief alleged that defendants participated together to commit some sixteen different kinds of fraudulent acts on State Farm, including agreeing to submit bills for services not provided, submitting bills for services not related to an auto accident, and agreeing to submit the same

bills to more than one insurance company. Indeed, State Farm set forth virtually every conceivable method of attempting to defraud an insurance company as part of this conspiracy.

State Farm contends that its allegation of this conspiracy by defendants to defraud State Farm is sufficient to satisfy the requirements of C.R.C.P. 9(b). The argument implicitly assumes that if fraudulent acts are alleged to have been undertaken as part of a conspiracy, it is not necessary to allege with particularity the actual fraudulent acts allegedly causing damages. In the circumstances presented here, we are not persuaded.

C.R.C.P. 9(b) requires that, in all averments of fraud, the circumstances constituting fraud shall be stated with particularity. To satisfy this requirement, the complaint must sufficiently "specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." As noted by the trial court, this requirement of particularity is intended in part to protect defendants from the reputational harm that may result from unsupported allegations of fraud, a charge which involves moral turpitude.

Here, as the trial court observed, the business relationship among State Farm and defendants spanned many years and consisted of hundreds of transactions. The claims dismissed did not identify any of the transactions that State Farm contends involved fraud.

Furthermore, State Farm has not alleged a conspiracy to engage in a particular pattern or practice in regard to every patient it insured. Nor has it alleged which of the various kinds of fraudulent acts described in the complaint were committed as to any particular patient or which patients were involved in any particular kind of fraud.

(Citations omitted). *Id.*, at 288-89.

73.    Likewise, in the instant case, Allstate's relationship with certain of the Defendants spanned many years and consisted of thousands of transactions. Allstate did not bother to name a specific patient, nor did it allege a conspiracy to engage in a particular pattern as to every patient. Allstate was clearly adversarial during each and every third-party claim process. If Allstate did not or failed to identify any false information in individual patient cases, then the conduct of the individual Doctors of Chiropractic cannot possibly constitute fraud in all cases in which they saw patients somehow involving Allstate.

74.     Since all of the patients treated at A&I (at least as far as Plaintiffs are concerned) undergo a similar course of treatment and receive similar diagnoses and prognoses (which all Plaintiffs contest), Plaintiffs assert that some or all of the bills for care and treatment submitted by injured patients must be fraudulent.[2] As plead, Plaintiffs simply want one or more of the following inferences to be drawn from the "facts" set forth above with respect to every single patient: (i) the patient was never injured; or (ii) the patient did not need x-rays; or (iii) the patient did not need an MRI; or (iv) if injured, the patient's treatment was not medically necessary; or (v) if the patient was injured and some treatments were appropriate, that the patient received too many treatments or the wrong type of treatment; or (vi) if the patient was injured and received the appropriate type and number of treatments, the treatment was "up coded" in order to inflate the amount of the patient's bill. Of course, in its Amended Complaint, Plaintiffs do not identify a single patient, and do not bother to identify why any patient's bill was, in whole or in part, "fraudulent." There were thousands of patients and bills and, even though the insurance companies are given the entire treatment file before any case is tried and/or settled, not one specific item is plead as "fraudulent". A bill relating to any given patient must stand or fall on its individual merits based on the condition of the patient, the medical necessity of the care given, and the appropriateness of the billing for that care.

## VIII.  THE CONSPIRACY AND UNJUST ENRICHMENT CLAIMS MUST BE DISMISSED

75.     As set forth above, the fraud claim must be dismissed. Likewise, the Plaintiffs' claims for conspiracy and unjust enrichment must be dismissed. The requirement of particularity in Rule 9(b) has been construed to apply to claims "sounding in fraud." *Parrish*, 899 P.2d at 289; *Zucker v. Katz*, 708 F.Supp. 525, 530 (S.D.N.Y. 1989); *Robison v. Caster*, 356 F.2d 924, 925 (7th Cir. 1966). The Complaint clearly evidences that Allstate's conspiracy and unjust enrichment claims "sound in fraud." (Amended Complaint ¶¶ 179, 185).

---

[2] Since the universe of patients about which Allstate complains all suffered injuries in automobile accidents, it would not be surprising that their diagnoses, prognoses and treatment would be similar.

Therefore, these claims must also be dismissed against the Doctors of Chiropractic for failure to plead with the particularity required by Rule 9(b).

### IX. <u>NO CONSPIRACY EXISTS AS A MATTER OF LAW</u>

76.    The essence of Allstate's of the conspiracy claims against the Doctors of Chiropractic is as follows:

(a)    The Respondent A&I Clinic Directors made patient referrals as a matter of routine only to entities owned by Robert Smith and allowed their name to be used to authorize or confirm medically unnecessary treatment.

(b)    Drs. Rhudy and Saucedo instructed chiropractic employees which facilities to use for certain services.

It is undisputed that all the named Respondent Doctors of Chiropractic are or were at one time salaried employees of Defendant A&I at all times pertinent to this Complaint.

77.    An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose and is required to show a meeting of the minds of two or more persons on the course of action. *Elliott v. Tilton*, 89 F.3d 260, 265 (5th Cir. 1996); *Wakefield v. State Farm Ins. Co.*, 75 F.Supp. 2d 545, 549 (N.D. Tex. 1999). It is well settled that a corporation cannot conspire with itself through its agents or employees acting within the scope of the employment, no matter how many of its agents participate in the complained of action. *Id.* Agents of a corporation cannot form a conspiracy while acting in their corporate capacity without receiving personal gain. The acts of an agent and its principal are the acts of a single entity and cannot constitute conspiracy. *Elliott*, 89 F.3d at 265.

78.    Because a corporate entity cannot conspire with itself, a civil conspiracy is not legally possible where a corporation(s) and its alleged co-conspirators are not separate entities, but stand in either a principal-agent or employer-employee relationship with the corporation. Corporate agents cannot be held liable for civil conspiracy in the absence of evidence showing they were acting for their own personal benefit rather than for

the benefit of the corporation. *Dodson v. Allstate Ins. Co.*, 47 S.W.2d 866, 876 (Ark. 2001). *Texas Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 138 (Tex.App.—Texarkana 2000, no pet.)

79.    All of the actions about which Plaintiffs complain were performed by the Movants in their duties as salaried clinic directors or doctors of chiropractic employed by A&I.  There is no allegation that the Doctors of Chiropractic were acting for their own personal benefit in committing the alleged acts, and in fact, they were not.  Since the Defendant Doctors of Chiropractic were salaried employees of A&I in the course of their employment, the civil conspiracy claim cannot survive and must be dismissed as a matter of law. *Elliott*, 89 F.3d at 265.

## X. <u>CONCLUSION</u>

The Complaint must be dismissed with prejudice against the moving Doctors of Chiropractic.  This Court has no subject matter jurisdiction as Plaintiffs have not met the requisite statutory threshold to invoke such.  Any statutory declarations sought by Allstate also fail due to their lack of standing to police the practice of medicine and the fact that no private cause of action exists.  The fraud, conspiracy and unjust enrichment claims must be dismissed with prejudice for failure to plead fraud with particularity as required by Rule 9(b) as any amendment would be futile.  Lastly, the individual Doctors of Chiropractic cannot be liable for conspiracy as a matter of law as they were employees acting in the scope of their employment and received no personal gain.

## XI. <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Respondents Thomas Rhudy, D.C., Louis Saucedo, D.C., Kenneth Łustik, D.C., Mark Rayshell, D.C., Larry Parent, D.C., Christopher Holowiski, D.C., Carey Fabacher, D.C., Patricia Johnson, D.C., Reza Assadollahi, D.C., Kyle Campbell, D.C., Tayana Stefanovic, D.C., Chad Blackmon, D.C., and Ramesh Sanghani, D.C. pray  the First Amended Complaint be in all things  dismissed with prejudice, or alternatively, such Complaint be dismissed with prejudice as to the fraud, civil conspiracy

and unjust enrichment claims, or in the further alternative, this motion to dismiss be granted and Plaintiffs be

given ten (10) days to amend, or, alternatively, that if the Plaintiffs' First Amended Complaint is not dismissed,

that discovery be limited to information related to the threshhold jurisdictional amount required for diversity

case, and that the Doctors of Chiropractic be awarded all other relief to which they are entitled.

Respectfully submitted,

JONES, ALLEN & FUQUAY, L.L.P.
8828 Greenville Avenue
Dallas, Texas 75243-7143
(214) 343-7400 (Telephone)
(214) 343-7455 (Facsimile)

By: _____
Lindy D. Jones
State Bar No. 10925500

ATTORNEYS FOR DEFENDANT DOCTORS
OF CHIROPRACTIC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon the following in the manner specified below, this 12th day of February, 2003:

Mr. David Kassabian
Mr. Bret Weatherford
Kassabian & Doyle, P.C.
1521 N. Cooper Street
Suite 650, LB 21
Arlington, Texas 76011
***By Certified Mail, Return Receipt Requested***

Mr. Rick Disney
Douglas, Wuester & Disney, P.C.
Fort Worth Club Tower
777 Taylor Street, Penthouse I-C
Fort Worth, Texas 76102-4919
***By Electronic Transmission***

Mr. Richard E. Young
Glast Phillips & Murray, P.C.
2200 One Galleria Tower
13355 Noel Road, L.B. 48
Dallas, Texas 75240-6657
***By Electronic Transmission***

Mr. Robert H. Renneker
1412 Main Street
Suite 210
Dallas, Texas 75202
***By Electronic Transmission***

Mr. Christopher M. Weil
Weil & Petrocchi
1601 Elm Street, Suite 1900
Dallas, Texas 75201-2846
***By Electronic Transmission***

Douglas Wood, D.O.
P.O. Box 260208
Plano, Texas 75026-0208
***By Electronic Transmission***

Mr. James D. Shields
Ms. Katherine DiSorbo
Ms. Elizabeth Basden
Shields, Britton & Fraser
5401 Village Creek Drive
Plano, Texas 75093
***By Electronic Transmission***

Mr. Bruce F. Howell
Mr. Michael E. Mears
Arter & Hadden, L.L.P.
1717 Main Street, Suite 4100
Dallas, Texas 75201-7366
***By Electronic Transmission***

Lindy D. Jones