

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ALLSTATE INSURANCE COMPANY, §
*et al.*, §
§
    Plaintiffs, §
§
v. §      NO. 3-01-CV2247-N
§
RECEIVABLE FINANCE COMPANY, §
LLC, *et al.*, §
§
    Defendants. §

FILED
JUN 21 2004

CLERK, U.S. DISTRICT COURT
By _____
          **Deputy**

APPENDIX TO
DEFENDANT ROBERT M. SMITH'S BRIEF
IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT
AND
MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS BS LIMOUSINE, LLC, AND LACIDEM MANAGEMENT, LP

LIST OF APPENDICES

APPENDIX A        "Defendants Robert M. Smith and Entities Motion to
Dismiss First Amended Complaint and Brief in
Support Thereof"

APPENDIX B        Movant's "Reply to Plaintiffs' Response to
Defendants Robert M. Smith and Entities' Motion to
Dismiss First Amended Complaint"

APPENDIX C        Affidavit of Robert M. Smith



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | NO. 3:01-CV-2247-N |
| | § | |
| RECEIVABLE FINANCE COMPANY, LLC, *et al.* | § | |
| Defendants. | § | |

**DEFENDANTS ROBERT M. SMITH AND ENTITIES MOTION TO
DISMISS FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF**

**APPENDIX A**

## TABLE OF CONTENTS

1.    DOCKET INFORMATION: NEW DEFENDANTS IN
      AMENDED COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.    MOTIONS TO DISMISS UNDER
      RULES 9(b), 12(b)(6) AND 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

3.    BRIEF: DISMISSAL OF CLAIMS AGAINST ROBERT M.
      SMITH DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    SCOPE OF CLAIMS AND DEFICIENCIES. . . . . . . . . . . . . . . . . . . . . . . . . . 3

            (1)   Suit for Payments Directly and Indirectly Made to and for Insureds arising
                  out of Allstate Insured Auto Accidents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            (2)   Single Business Enterprise. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

            (3)   Statutory Violations: Knowingly Improper Billing to Third
                  Party Payor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

            (4)   Statutory Violations: Payment or Acceptance of Payment for
                  Securing or Soliciting a Patient for or from Licensee. . . . . . . . . . . . . . . 5

            (5)   No Statutory, Regulatory or Other Authority: Self-Referral . . . . . . . . . . 7

            (6)   No Statutory, Regulatory or Other Authority: Aiding & Abetting. . . . . . 7

      B.    PLAINTIFFS HAVE NO STANDING UNDER EITHER THE
            MEDICAL PRACTICE ACT OR THE TEXAS OCCUPATION CODE. . . . . 8

      C.    PLAINTIFFS FAIL TO PLEAD COMMON LAW FRAUD WITH
            PARTICULARITY AS REQUIRED UNDER RULE 9(B). . . . . . . . . . . . . . . . 12

      D.    COMMON LAW CONSPIRACY AND UNJUST
            ENRICHMENT CLAIMS ALSO SHOULD BE DISMISSED. . . . . . . . . . . . . 17

      E.    REQUEST FOR DECLARATORY RELIEF: DUPLICATION
            OF THE DAMAGE CLAIMS; NO ACTUAL CONTROVERSY. . . . . . . . . . 19

      F.    THE FIRST AMENDED COMPLAINT DOES NOT REFLECT
            THAT THIS COURT HAS SUBJECT MATTER JURISDICTION. . . . . . . . . 21

## INDEX OF AUTHORITIES

Page

**Cases**

*Anthony v. Security Pacific Fin. Serv. Inc.*, 75 F.3d 311 (7th Cir. 1996) ................... 22

*Choate v. United States*, 413 F.Supp. 475 (N.D. Okla. 1976) .......................... 19

*Cole v. Huntsville General Hospital*,
    920 S.W.2d 364, 372-73 (Tex. App.—Houston [1st Dist.] 1996, writ denied,
    cert. denied 117 S.Ct. 1312 (1997)) ................................... 8,9,11,12

*Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538 (3rd Cir. 1995) ....................... 21

*Dodson v. Allstate Ins. Co.*, 47 S.W.2d 866, 876 (Ark. 2001) .......................... 12

*Elliott v. Tilton*, 89 F.3d 260 (5th Cir. 1996) ................................... 18,19

*Feikema v. Texaco, Inc.*, 16 F.3d 1408 (4th Cir. 1994) ................................ 23

*Laughlin v. K-Mart Corp.*, 50 F.3d 871 (10th Cir. 1995) ............................... 21

*Lawson v. Callahan*, 111 F.3d 403 (5th Cir. 1997) ................................ 19,20

*Mortensen v. First Federal Savings & Loan Ass'n*,
    549 F.2d 884 (3rd Cir. 1977) ...................................... 22

*Parker, M.D. v. Texas Medical Association*, 2002 WL 1728614
    (Tex. App. - Austin, July 26, 2002, pet. denied)(No.
    03-01-00540-CV, not designated for publication) ............................... 9

*Quest Medical Inc. v. Apprill*, 90 F.3rd 1081 (5th Cir. 1996) .......................... 12

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) ............................... 22

*Robison v. Caster*, 356 F.2d 924 (7th Cir. 1966) ................................... 17

*Smith v. Vowell*, 379 F.Supp. 139 (W.D. Tex. 1974) ................................. 20

*Schlesinger v. Councilman*, 420 U.S. 738, 420 U.S. 738, 95 S.Ct. 1300,
    43 L.Ed.2d 591 (1975) ...................................... 23

MOTION TO DISMISS FIRST AMENDED COMPLAINT & BRIEF IN SUPPORT - Page v

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283,
58 S.Ct. 586, 82 L.Ed. 845 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21,22

*State Farm Mutual Automobile Insurance Company v. Parrish, et al.*
899 P.2d 285, 288-89 (Colo. 1994) (*rehr'g denied* February 9, 1995,
*certiorari denied* July 24, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,15,17

*Stephan v. Baylor Medical Center at Garland*, 20 S.W.3d 880, 886
(Tex. App.–Dallas 2000, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Texas Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129 (Tex. App. - Texarkana 2000, no pet.) . . . . . . 18

*Travelers Ins. Co. v. Obusek*, 72 F.3d 1148 (3d Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*U.S. ex rel. Clausen v. Laboratory Corporation of America*,
290 F.3d 1301 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,13

*U.S. ex rel. Russell v. EPIC Healthcare Mgmt. Group, et al.*,
193 F.3d 304 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*U.S. ex rel. Thompson v. Columbia/HCA Hearthcare Corp.*,
125 F.3d 899 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wakefield v. State Farm Ins. Co.*, 75 F.Supp. 2d 545 (N.D. Tex. 1999) . . . . . . . . . . . . . . . . . . 18

*Williams v. WMX Tech, Inc.*, 112 F.3d 175 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 12,14

*Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Wolfer v. Thaler*, 525 F.2d 977 (5th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Zucker v. Katz*, 708 F.Supp. 525 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Statutes**

28 U.S.C. §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

28 U.S.C. §1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21,23

28 U.S.C. §2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,20

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3,22

MOTION TO DISMISS FIRST AMENDED COMPLAINT & BRIEF IN SUPPORT - Page v

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2,3,12,13,15,16,17,18

Fed. R. of Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2,3,19,22

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, *et. al.,* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | NO. 3:01-CV-2247-N |
| | § | |
| RECEIVABLE FINANCE COMPANY, | § | |
| L.L.C., *et al.,* | § | |
| | § | |
| Defendants. | § | |

## MOTION OF DEFENDANTS ROBERT M. SMITH AND ENTITIES TO DISMISS FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF

ROBERT M. SMITH, LONE STAR RADIOLOGY MANAGEMENT, LLC (d/b/a Lone Star Radiology, "Lone Star"), WHITE ROCK OPEN AIR MRI, LLC (d/b/a White Rock Open MRI, "White Rock")), NORTH TEXAS OPEN AIR MRI, LLC (d/b/a North Texas Open MRI, Harris County MRI and Bexar County MRI, "North Texas")), REHAB 2112 ("2112"), LLC, METROPLEX PAIN CENTER, INC. ("Metroplex"), BS LIMOUSINE, LLC ("BS Limo"), and LACIDEM MANAGEMENT, LP ("Lacidem", and all, collectively, the "Robert M. Smith entities"), some of the Defendants in the above styled and numbered cause, in response to Plaintiffs' First Amended Complaint (the "Complaint"), file this their Motion under Fed. R. Civ. P. 9(b) and 12(b)(6) to Dismiss Plaintiffs' First Amended Complaint and Brief in Support, and for same would show the Court as follows:

1.     DOCKET INFORMATION: NEW DEFENDANTS IN AMENDED COMPLAINT

    A.     The original Complaint was filed on or about November 9, 2001. Hon. Barbara Lynn, District Judge, referred motions to Magistrate Judge Sanderson. Subsequently, the case was assigned

to Hon. David C. Godbey, August 12, 2002 (hereinafter the "Court"), before whom the case is pending.

B       On January 14, 2003, Judge Godbey acted upon Plaintiffs' July 22, 2002 motion for leave and November 26, 2002 amended motion for leave to amend, and the original Defendants' motion to dismiss for lack of subject matter jurisdiction filed March 28, 2002, a supplement to that motion, filed July 24, 2002, and motion to dismiss for failure to join an indispensable party (Allstate County Mutual) filed on July 24, 2002. Also on January 14, 2003, the Court directed the District Clerk to file Plaintiffs' First Amended Complaint (the "Complaint" or "Amended Complaint").

C.       On January 24, 2003, Magistrate Judge Sanderson effectively precluded interim discovery disputes until after the provision of Rule 26(d) had been satisfied affording affected parties the right to renew requests for additional relief.

2.       MOTIONS TO DISMISS UNDER RULES 9(b), 12(b)(6) AND 12(b)(1)

A.       Fed. R. Civ. P. 9(b) provides, with respect to:

> Fraud, Mistake, Condition of the Mind.  In all averments of fraud or mistake, the circumstances constituting fraud or malice shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed. R. Civ. P. 9(b).  "Circumstances constituting fraud or malice," while not absolutely requiring detail of time, place, and the actor, does require more than the allegations of: (i) chiropractic doctors treat patients injured in vehicular collisions; (i) the patients are x-rayed; (iii) all patients are referred to receive MRI's; (iv) preliminary reports for all patients have similar findings; (v) all patients receive similar treatment for injuries; (vi) some Defendants advertise services to individuals who may be injured in vehicular collisions; and (vii) lawyers representing individuals who are injured in vehicular collisions refer some of their clients to some of the Defendants for treatment.  Among

MOTION TO DISMISS FIRST AMENDED COMPLAINT & BRIEF IN SUPPORT - Page 2

numerous defendants and with multiple potential capacities, *i.e.*, distinction from another's conduct, and employee, contractor, licensee, or privity ("who"), specific conduct ("what"), "where", "when", and "how", a lengthy narrative, conclusory pleading should not survive Rules 9(b) or 12(b)(6) scrutiny.

      B.      Fed. R. of Civ. P. 12(b)(6) provides, with respect to "[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted." Similar to Rule 9(b), each Defendant is entitled to be provided with notice of the circumstances of his culpability or inculpation in fraud, notwithstanding "enterprise" and "conspiracy" allegations, even though enterprise and conspiracy theories are conclusively alleged.

      C.      Robert M. Smith moves to dismiss claims against him under Fed. R .Civ. P. 9(b) and 12(b)(6). The Robert M. Smith entities also move to dismiss claims against them under Fed. R. Civ. P. 9(b) and 12(b)(6).

      D.      The Robert M. Smith entities and Robert M. Smith also move to dismiss this matter for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

3.     <u>BRIEF: DISMISSAL OF CLAIMS AGAINST ROBERT M. SMITH DEFENDANTS</u>

      **A.**      **SCOPE OF CLAIMS AND DEFICIENCIES.**

      (1)      <u>Suit for Payments Directly and Indirectly Made to and for Insureds arising out of Allstate Insured Auto Accidents.</u> Plaintiffs seek to recover "sums" allegedly (i) fraudulently "procured [(ii)] by **Defendants** [(iii)] **from Plaintiffs** [(iv)] since **at least** 1998, [(v)] "by means of...

MOTION TO DISMISS FIRST AMENDED COMPLAINT & BRIEF IN SUPPORT - Page 9

billings for [(vi) allegedly] unnecessary and unreasonable treatment, examinations, diagnostic tests, and other services, [and (vii), all] in regard to persons involved in automobile collisions." Complaint, p. 3, ¶ 1 (emphasis added).

(2)    Single Business Enterprise.   Under section XV, "Theories of Liability and Causes of Action", Plaintiffs allege a "single business enterprise" (¶¶ 123-132) with respect to "Accident & Injury, Receivable Finance, Lone Star Radiology, Metroplex Pain, White Rock Open Air MRI, North Texas Open Air MRI, Rehab 2112, Lacidem Management, and BS Limousine" and "Plaintiffs would show that Robert Smith owns all these entities", Complaint, p. 33, ¶¶ 124-125, and that "the entities share common offices (p. 33, ¶ 126). and "pursuant to the Single Business Enterprise doctrine, these entities have integrated their resources to achieve a common business purpose." The Plaintiffs thus conclude, "in addition to any individual liability . . . the members of the Single Business Enterprise are jointly and severally liable for the acts of the **other** constituent entities." Complaint, p. 36, ¶ 132 (emphasis added).

(3)    Statutory Violations: Knowingly Improper Billing to Third Party Payor. Plaintiffs rely on Tex. Occ. Code Ann. § 101.203, "a health care **provider** may not violate [Tex. H & Saf. Code Ann.] § 311.0025". Complaint, ¶ 135 (emphasis supplied). The earlier statute provided that "a health care professional may not persistently or flagrantly overcharge or overtreat a patient". Complaint, ¶ 136. The Complaint does not allege that Robert M. Smith is a health care professional, and he is not. The Complaint does not allege which Plaintiffs, if any, have been "a third party payor." The Complaint does not allege which particular entity, if any, knowingly failed to provide, or knowingly provided services that were allegedly "improper, unreasonable, or medically or clinically unnecessary", or when such "bills" were "submitted", or to whom such bills were

MOTION TO DISMISS FIRST AMENDED COMPLAINT & BRIEF IN SUPPORT - Page 4

submitted.  The Complaint does not allege under what authority in the interest of health, welfare, or safety of the public, Plaintiffs act, *i.e.*, authority from the Attorney General of the State of Texas, or some other public law enforcement agency.  Complaint, ¶ 135-140.  Significantly, there are no allegations of any specific instance of any patient who received unnecessary treatment from any of the Defendants.

(4)    Statutory Violations: Payment or Acceptance of Payment for Securing or Soliciting a Patient for or from Licensee. Plaintiffs allege Tex. Occ. Code Ann. § 102.001, "a person commits an offense if the person knowingly offers . . . or accepts . . . remuneration for securing or soliciting . . . for or from a person licensed, certified, or registered by a state health care regulatory agency".  The Complaint alleges that among other Defendants, Robert Smith offered "to accept, as a matter of routine, undisclosed remuneration from personal injury attorneys, in the form of set discounted payments, in order to solicit patients . . ."  Complaint, p. 38, ¶ 141.

Similarly, Plaintiffs allege Tex. Occ. Code Ann.  § 102.051, which prohibits solicitation "for soliciting or securing a patient or patronage, or accepting anything of value for soliciting or securing a patient . . . for a person the art of healing with or without the use of medicine," and allege that Defendants Robert M. Smith and some of his entities violated the statutes by "offering to accept, as a matter of routine, undisclosed remuneration from personal injury attorneys, the form of set discounted payments, in order to solicit patients for [the Smith entities]", and that "self-referral" occurs between Robert M. Smith entities, citing Tex. Occ. Code Ann. § 102.006, concerning failure to disclose affiliations with other health care entities.  Complaint, ¶ 149.  Because the Complaint fails to allege Defendant Robert M. Smith's securing or soliciting a patient or patronage for a

MOTION TO DISMISS FIRST AMENDED COMPLAINT & BRIEF IN SUPPORT - Page 5

licensee, and Smith's failure to disclose as required under § 102.006, the Complaint fails to state a cause of action against him. What Plaintiffs do allege is that:

> ... Specifically, automobile collision patients are referred by Accident & Injury to (1) Metroplex Pain or Lone Star Radiology, (2) an MRI facility that is a d/b/a of either White Rock Open Air MRI or North Texas Open Air MRI, (3) to Dr. Martinez for a reading of the MRI, and (4) a medical doctor or doctors, such as Dr. Padilla and/or Dr. Laughlin, for 'second opinion' medical consultations. . . .

Complaint, ¶ 151. As to others than Robert M. Smith individually, the Complaint alleges in ¶152, Defendant A&I and its chiropractors and employees do not advise that "[other Robert M. Smith entities] are owned by Accident & Injury owner Robert M. Smith" or are "d/b/a's" of such "co-owned" entities. Plaintiffs do not allege under what authority, in the interest of health, welfare, or safety of the public, Plaintiffs act, *i.e.*, authority from the Attorney General of the State of Texas, or some other public law enforcement agency. What is plainly clear, however, Plaintiffs know what is here assumed to be true, and Plaintiffs are not the patients or the professionals, and are not required to be apprised.

Plaintiffs allege that the Robert M. Smith entities and health care providers based treatment and referrals on "enriching the common enterprise", rather than "reasonableness and necessity", and that the Robert M. Smith entities "share a common ownership".

The Complaint does not allege that Robert M. Smith is a health care professional, and he is not. The Complaint does not allege which Plaintiffs, if any, have been "a third party payor". The Complaint does not allege which particular entity, if any, knowingly failed to provide but billed services, or knowingly provided services that were allegedly "improper, unreasonable, or medically or clinically unnecessary", or when such "bills" were "submitted", or to whom such bills were submitted. Again, the Complaint does not allege under what authority Plaintiffs specifically seek

MOTION TO DISMISS FIRST AMENDED COMPLAINT & BRIEF IN SUPPORT - Page 6

relief. The statutes upon which authority is alleged do not supply such connection or private remedy. Complaint, ¶¶135-140.

(5)     No Statutory, Regulatory or Other Authority: Self-Referral.  For matters within the limited scope of Allstate's claims, Plaintiffs also rely upon TEX. OCC. CODE ANN. §102.051, which provides that a person commits an offense if the person "practices the art of healing with or without the use of medicine" and "employs or agrees to employ, pays or promises to pay, or rewards or promises to reward another for soliciting or securing a patient or patronage." Plaintiffs do not allege that Robert Smith is a medical doctor or otherwise a person or entity within the scope of the statute.

(6)     No Statutory, Regulatory or Other Authority: Aiding & Abetting.  Plaintiffs allege in ¶¶ 158 and 159, Tex. Occ. Code Ann. § 164.052, which imposes a prohibition against physicians aiding and abetting "the practice of medicine" by a person that is not licensed to practice medicine by the Board, relying that Defendants Padilla, Laughlin and Martinez "entered into a [sic] employment relationship with Robert Smith, Accident & Injury, and Receivable Finance in regard to Accident & Injury patients, in which they were paid **what in effect was a salary** by Receivable Finance", Complaint, pp. 43-44, ¶ 155 (emphasis supplied). This quantum leap of logic constituted the foundation of the Original Complaint, and under this Complaint, the pleader concludes "under this fee-splitting arrangement, the lay Defendants received the vast majority of professional fee...", Complaint, p. 44, ¶ 159.  No allegations have yet been made to make common-place factoring of health care receivables a control, direction, or statutorily prohibited "arrangement".

MOTION TO DISMISS FIRST AMENDED COMPLAINT & BRIEF IN SUPPORT - Page 7

**B.    PLAINTIFFS HAVE NO STANDING UNDER EITHER THE
      MEDICAL PRACTICE ACT OR THE TEXAS OCCUPATION CODE.**

With respect to the provisions cited and relied upon by Plaintiffs under the Texas

Occupational Code and incorporation of provisions of the Texas Health and Safety Code, and the

Medical Practice Act, as summarized above, each of those claims must fail because, as a matter of

law, Plaintiffs have no standing to seek relief under these statutory schemes which provide for no

private right of action. The Court should dismiss these causes of action with prejudice and without

any further opportunities for leave because they cannot be re-pleaded to state a proper, cognizable

cause of action as a matter of law.

In particular, the statutory provisions relied upon by Plaintiffs involve licensing and

disciplinary regulations dealing with the medical profession. The conclusion that no private right

of action by civil suit under this statutory scheme has been confirmed by applicable case law. Texas

Health and Safety Act, Tex. Rev. Civ. Stat. Ann. arts. 4495b §§3.07(a) and 3.08(15), the precursors

provisions to what is now Tex. Occ. Code Ann. §§155.01 and 164.052, were addressed by the

Houston Court of Appeals in *Cole v. Huntsville General Hospital*, 920 S.W.2d 364, 372-73

(Tex.App.—Houston [1st Dist.] 1996, writ denied, cert. denied 117 S.Ct. 1312 (1997)). What might

not be surprising to a litigant reading the provisions of the Code before filing a pleading, the *Cole*

court held that those provisions create no private cause of action, observing the following:

> Similar to the Hospital Licensing Act, the Medical Practice Act is enforced through criminal penalties and
> through administrative regulation. The Act defines unlawful and prohibited practices and provides criminal
> penalties for a person practicing medicine in violation of the Act. Tex. Rev. Civ. Stat. Ann. art. 4495b, § 3.07
> (Vernon Pamph.1996). The Act also defines the grounds for revocation and suspension of a license by the
> board, sets forth the charging and hearing process to be followed by the board, and lists the methods of
> discipline available to the board. Tex. Rev. Civ. Stat. Ann. art. 4495b, §§ 4.01-4.12 (Vernon Pamph.1996).
> The Act also authorizes the attorney general to file an action to recover a civil penalty from a person in violation
> of the Act. Tex. Rev. Civ. Stat. Ann. art. 4495b, § 4.126 (Vernon Pamph.1996).

MOTION TO DISMISS FIRST AMENDED COMPLAINT & BRIEF IN SUPPORT - Page 8

> Employing the same reasoning above, we find that the legislature did not intend a private cause of action under the Act. We find the trial court did not err by refusing to graft a private cause of action for Cole into the Act. *Williams*, 850 S.W.2d at 284.

*Id.*, 920 S.W.2d at 372-73.

In *Stephan v. Baylor Medical Center at Garland*, 20 S.W.3d 880 (Tex.App. - Dallas 2000, no pet.), the Dallas Court of appeals, considering claims of a private litigant under the provision of the Texas Medical Practice Act, now codified at TEX. OCC.CODE ANN. § 151.051, reiterated that:

> These statutes . . . do not create a right of action in favor of physicians against hospitals that fail to comply. *See Cole v. Huntsville Mem'l Hosp.*, 920 S.W.2d 364, 372-73 (Tex.App.-Houston [1st Dist.] 1996, writ denied). Instead, enforcement is statutorily placed in the hands of the State and its agencies. A hospital's failure to provide procedural due process to physicians applying for privileges *may be redressed solely through actions by the attorney general, the Texas Department of Health, or the commissioner of health. See id.; see also* Tex. Health & Safety Code Ann. §§ 241.051-.059 (Vernon 1992 & Supp.2000). Through the State's actions, a hospital may be enjoined, subjected to civil or administrative penalties, or have its license revoked. Id. §§ 241.051-.059 A hospital may not, however, be held liable in damages to an individual physician for its failure to provide due process.
>
> Similarly, the Texas Medical Practice Act, which contains the guidelines for medical staffing rules, includes a complex enforcement scheme. *See* Tex. Rev. Civ. Stat. Ann. art. 4495b (repealed) (current version at Tex. Occ. Code Ann. §§ 165.001-.160 (Vernon Pamph.2000)). *This scheme does not afford physicians the ability to bring private actions against hospitals. See Cole*, 920 S.W.2d at 372-73. The language of the Act makes the adoption of rules and regulations for medical staff appointments voluntary. *See* Tex. Rev. Civ. Stat. Ann. art. 4495b § 1.02 (repealed) (current version at TEX. OCC.CODE ANN. § 151.051 (Vernon Pamph.2000). Creating a private right of action to enforce the guidelines would discourage hospitals from adopting rules and regulations with respect to staffing and defeat the purpose of the Act, which is to protect the public interest. *See* Tex. Occ. Code Ann. § 151.003 (Vernon Pamph.2000). Accordingly, we conclude that existing Texas law cannot form the basis of Stephan's claim that he is entitled to recover damages from Baylor because it violated mandated standards in making its decision to deny him staff privileges.

*Stephan v. Baylor Medical Center at Garland*, 20 S.W.3d at 886 (emphasis added).

Similarly, in determining a private litigant's right to bring a cause of action under Tex. Occ. Code Ann. § 165.155(a), (e), of the Medical Practice Act, the Austin Court of Appeals relied upon *Colt* to confirm that the Medical Practice Act "does not create a private cause of action." *Parker, M.D. v. Texas Medical Association*, 2002 WL 1728614 (Tex. App. - Austin, July 26, 2002, pet. denied) (No. 03-01-00540-CV, not designated for publication). That court noted with significance that the subject statutory scheme provided that violations thereof were an "offense" carrying a

MOTION TO DISMISS FIRST AMENDED COMPLAINT & BRIEF IN SUPPORT - Page 9

penalty of a Class A misdemeanor. *Id.*, p. 2, n.3. Similar language involving criminal penalties can be found in the statutory provisions which Plaintiffs claim have been violated by the various Defendants.

Tex. Occ. Code Ann. § 101.203, upon which Plaintiffs also assert claims for relief, Complaint, ¶¶ 135-140, is found within Chapter 101 entitled "Health Professions Council," governing non-physician health professions. This section is analogous to the provisions set forth in Chapters 155 and 164 discussed above in that they concern non-physician healthcare providers such as chiropractors who are governed by the Texas Board of Chiropractic Examiners. Tex. Occ. Code Ann. § 101.002(1). Accordingly, Plaintiffs' assertion that they have a private cause of action under § 101.203 which prohibits overcharging or over treating patients is inappropriate. Chapter 101 creates no such private cause of action, instead providing grounds for license revocation of healthcare providers (including chiropractors), one of which grounds is set forth in Tex. Occ. Code Ann. § 101.203. Section 101.204 provides that the remedy for a violation of a provision of Chapter 101 is revocation or denial of a license. Although violators could be subject to civil penalties under Tex. Occ. Code Ann. § 101.251 or injunction under Tex. Occ. Code Ann. § 101.252, the right and authority to seek those civil penalties or an injunction is vested in the attorney general. Chapter 101 does not provide for a private cause of action either directly or by implication.

Instead, like the Medical Practice Act, Chapter 101 sets out the grounds for the suspension of a license by a healthcare provider, listing the methods of discipline available for a violation thereunder. And as the Medical Practice Act does, Chapter 101 defines the grounds for the revocation of a healthcare provider's license and lists the methods of discipline available to the governing board or the attorney general. There is no private cause of action created.

MOTION TO DISMISS FIRST AMENDED COMPLAINT & BRIEF IN SUPPORT - Page 10

Plaintiffs' reliance upon Tex. Occ. Code Ann. § 102.001, prohibition against solicitation within Chapter 102, governs health care professionals. Many of the Defendants, including Defendant Robert Smith, are not health care professionals, precluding any application to such Defendants, even if a private cause of action did exist. Similar to the preceding sections, from which Plaintiffs claim authority, Chapter 102 provides for action only by the governing board of the particular health care discipline involved, Tex. Occ. Code Ann. § 102.008, and for injunctive relief, Tex. Occ. Code Ann. § 102.009, and civil penalties, Tex. Occ. Code Ann. § 102.010. Those rights of injunction or to impose civil penalties are vested exclusively in the attorney general or other public attorneys. Like other chapters from which Plaintiffs seek relief, Chapter 102 lists specific prohibited behavior and outlines the process available to police and punish, without provision of a private cause of action. Plaintiffs have no authority under these provisions.

Plaintiffs also seek relief under Tex. Occ. Code Ann. § 105.002(a), which section prohibits a health care provider from making false or fraudulent claims under an insurance policy. Tex. Occ. Code Ann. § 105.002(b) provides that in addition to other provisions of civil and criminal law, the commission of <u>unprofessional</u> conduct under subsection (a) constitutes a cause for the revocation or suspension of a provider's license or other disciplinary action without mention or implication of a private cause of action.

Plaintiffs have no standing to assert the alleged stattory claims agfainst Robert Smith or his entities. Under *Cole,* and subsequent jurisprudence, no private cause of action exists under the Medical Practice Act or the Occupation Code. Plaintiffs have no standing to police health care providers, or to use that threat to defeat health care claims.

The legislature's "express mention of one person, thing, consequence, or class is tantamount to the express exclusion of all others." *Quest Medical Inc. v. Apprill*, 90 F.3rd 1081, 1091 (5th Cir. 1996), *citing Cole v. Huntsville Memorial Hosp.*, 920 S.W.2d at 372; *Lenhard v. Butler*, 745 S.W.2d 101, 105 (Tex.App. - Fort Worth 1988, writ denied). *Cole* and following authority confirm recodification without broadening coverage to include a private cause of action. Similarly, the Texas Occupations Code contains no such provisions. Based upon the absence of statutory authority, previously addressed by the state courts, dismissal of claims under the Texas Occupations Code and Medical Practice Act should be with prejudice, and without leave to amend.

## C. PLAINTIFFS FAIL TO PLEAD COMMON LAW FRAUD WITH PARTICULARITY AS REQUIRED UNDER RULE 9(b).

Plaintiffs allege common law fraud based generally upon the presentation of health care reports of, presumably, automobile accident victims who may have been insureds of other insurance companies or victims of insureds of Allstate's, as well as possible insureds of Allstate's having health care coverage arising out of an automobile accident (personal injury protection or "PIP", Complaint, ¶¶ 160-176). In all events other than PIP, Allstate alleges no connection whatsover with the Defendants and, in all instances, presumably, has "adjusted" claims paid to person other than Robert M. Smith or his entities. Plaintiffs allege that some or all of Plaintiffs relied on such representations purportedly made to third parties, primarily patients and their lawyers, but, with the exception of PIP, not Plaintiffs.

Plaintiffs must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made and explain why the statements were fraudulent." *Williams v. WMX Tech, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *see also, U.S. ex rel. Clausen v.*

MOTION TO DISMISS FIRST AMENDED COMPLAINT & BRIEF IN SUPPORT - Page 12

*Laboratory Corporation of America*, 290 F.3d 1301, 1311 (11th Cir. 2002); *U.S. ex rel. Russell v. EPIC Healthcare Mgmt. Group, et al.*, 193 F.3d 304, 308 (5th Cir. 1999); *U.S. ex rel. Thompson v. Columbia/HCA Hearthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).

> [A} proper pleading under Rule 9(b) requires that:
>
> allegations of fraud include: (1) precisely what [false or fraudulent] statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the context of such statements and the manner in which they misled the Plaintiff, and (4) what defendants obtained as a consequence of the fraud.

*Clausen v. Laboratory Corporation of America*, 290 F.3d at 1310.

While certainly lengthy and generous in its broad categories of allegations, when read carefully, the Complaint actually fails to plead or identify any specific false claim or identify what any particular Defendant has received from the purported "fraud". Plaintiffs contend generally that Defendants (without adequate distinction between them) "submitted" claims to Allstate for payment. Although alleging elsewhere in the Complaint a purported total of claims presented collectively, if at all, by Defendants, Complaint ¶ 213, Plaintiffs do not identify what any of them have paid to each of the Defendants Robert Smith and the Robert M. Smith entities.

Plaintiffs should not be permitted to replead again to cure this deficiency. Any further amendments would be futile, without use or purpose. Under analogous circumstances, the Eleventh Circuit addressed such futility in permitting further amendment:

> Clausen merely offers conclusory statements, and does not adequately allege when–or even if–the schemes were brought to fruition. He merely alleged that "these practices resulted in the submission of false claims for payment to the United States." No amounts of charges were identified. No actual dates were alleged. No policies about billing or even second-hand information about billing practices were described, other than to state that electronic HCFA Form 1500s with medical test codes were used. No copy of a single bill or payment was provided.

*Clausen v. Laboratory Corporation of America*, 290 F.3d at 1312.

MOTION TO DISMISS FIRST AMENDED COMPLAINT & BRIEF IN SUPPORT - Page 13

This Circuit's precedent is no less stringent, requiring Plaintiffs to plead the who, what, when and where and how of the alleged fraud when asserting such a claim. *Williams v. WMX Tech, Inc.*, 112 F.3d 175, 179 (5th Cir. 1997). While lengthy, Plaintiff actually allege only, in a wholly global and conclusory fashion, that some or all of health care services provided by the Defendants were medically unnecessary. Other than outlining alleged business relationships among the Defendants and speculating that from such relationships fraud can be inferred, Plaintiffs provide no factual basis for their assertions that billings were submitted for medically unnecessary services (*i.e.*, not one specific instance of a false bill or unnecessary treatment). *See, Columbia/HCA Healthcare Corp.*, 125 F. 3d at 903. In *Columbia/HCA Healthcare*, the plaintiff's complaint was dismissed because of a failure to provide a factual basis for the belief that the defendant therein had submitted claims for medically unnecessary services other than a reference to statistical studies. That court further determined the allegations amounted to nothing more than speculation. *Id.* at 903. Similarly, under the Complaint, Plaintiffs' core allegations are vague, conclusory, speculative inferences, and the Complaint should be dismissed.

Following pleading requirements under Colorado law mirroring the requirements of the Federal Rules, in a case on analogous facts, the Colorado Court of Appeals dismissed State Farm's claims against a chiropractor for billing fraud, for failing to plead fraud with particularity. *State Farm Mutual Automobile Insurance Company v. Parrish*, 899 P.2d 285, 288-89 (Colo. 1994) (*rehr'g denied February 9, 1995, certiorari denied* July 24, 1995). The *Parrish* court's holding, while not Federal precedent, provides persuasive reasoning and relevant analysis of similar facts, as follows:

> The ninth claim for relief alleged that defendants participated together to commit some sixteen different kinds of fraudulent acts on State Farm, including agreeing to submit bills for services not provided, submitting bills for services not related to an auto accident, and agreeing to submit the same bills to  more than one insurance

company. Indeed, State Farm set forth virtually every conceivable method of attempting to defraud an insurance company as part of this conspiracy.

State Farm contends that its allegation of this conspiracy by defendants to defraud State Farm is sufficient to satisfy the requirements of C.R.C.P. 9(b). The argument implicitly assumes that if fraudulent acts are alleged to have been undertaken as part of a conspiracy, it is not necessary to allege with particularity the actual fraudulent acts allegedly causing damages. In the circumstances presented here, we are not persuaded.

C.R.C.P. 9(b) requires that, in all averments of fraud, the circumstances constituting fraud shall be stated with particularity. To satisfy this requirement, the complaint must sufficiently "specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." As noted by the trial court, this requirement of particularity is intended in part to protect defendants from the reputational harm that may result from unsupported allegations of fraud, a charge which involves moral turpitude.

Here, as the trial court observed, the business relationship among State Farm and defendants spanned many years and consisted of hundreds of transactions. The claims dismissed did not identify any of the transactions that State Farm contends involved fraud.

Furthermore, State Farm has not alleged a conspiracy to engage in a particular pattern or practice in regard to every patient it insured. Nor has it alleged which of the various kinds of fraudulent acts described in the complaint were committed as to any particular patient or which patients were involved in any particular kind of fraud.

*State Farm Mutual Automobile Insurance Company v. Parrish*, 899 P.2d at 288-89 (citations

omitted).

Like the situation in the *Parrish* case, Plaintiffs' transactional history with certain of the

Defendants is alleged to have spanned many years and consisted of thousands of individual

payments. Materially, Plaintiffs also fail to identify a single fraudulent bill. Plaintiffs also do not

allege a conspiracy to engage in a particular pattern as to every patient seen by some of the

Defendants.

More particularly, because all of the patients purportedly are funneled into a course of

identical or materially similar diagnoses and prognoses at Defendant Accident and Injury Pain

Centers, Inc., then, Plaintiffs assert, some or all of the bills for care and treatment submitted by the

Defendants or by the injured patients must be fraudulent. In other words, Plaintiffs claim that one

or more of the following inferences must be drawn from the relational allegations set forth in the

MOTION TO DISMISS FIRST AMENDED COMPLAINT & BRIEF IN SUPPORT - Page 15

Complaint with respect to some or all of the patients treated by Defendants: (i) the patient was never injured; or (ii) the patient did not need x-rays; or (iii) the patient did not need an MRI; or (iv) if injured, the patient's treatment was not medically necessary; or (v) if the patient was injured and some treatments were appropriate, that the patient received too many treatments or the wrong type of treatment; or (vi) if the patient was injured and received the appropriate type and number of treatments, the treatment was "up coded" in order to inflate the amount of the patient's bill. Such allegations fail to identify what Plaintiffs are claiming with respect to any given patient, physician, Defendant, or any specific claim.

Fed. R. Civ. P. 9(b) does not shift the onus to Defendants to speculate as to the specifics of the allegations of fraud to determine an appropriate answer to same. The Rule requires that fraud be pleaded with particularity so that Defendants Robert Smith and the Robert M. Smith entities do not have to guess. A bill relating to any given patient must stand or fall on its individual merits based on the condition of the patient, the medical necessity of the care given, and the appropriateness of the billing for that care. Plaintiffs apparently seek to try or re-try before this Court the chiropractic claims of potentially thousands of previously resolved or pending vehicle accident claims and state court actions without having identified a single one with details, without joining as a party any of the persons actually making the claim against the Plaintiffs' insured, and by shifting the burden of "disproof" to the Defendants. Because Plaintiffs wholly fail to identify the bills or submissions about which they complain, the time, and the actors, the Complaint fails to meet the requirements of Fed. R. Civ. P. 9(b) and should be dismissed.

D.     **COMMON LAW CONSPIRACY AND UNJUST
         ENRICHMENT CLAIMS ALSO SHOULD BE DISMISSED.**

The Complaint, ¶¶ 177-188, alleges that "referring automobile collision claimants to other defendants for unreasonable and unnecessary examination, treatment or continued treatment and/or tests and generating documentation, . . . substantiating the unreasonable and unnecessary treatment and tests" somehow constitutes a fraud on Plaintiffs, the connection for which is not sufficient to support, factually or by allegation, claims of fraud. In other words, Plaintiffs' civil conspiracy claims sound in fraud (*i.e,* a civil conspiracy to commit fraud) and, therefore, are no stronger than the deficient allegations of fraud addressed in the previous section.

Similarly, Plaintiffs' claims of unjust enrichment, Complaint, ¶¶ 184-188, seek recovery based upon alleged "false and fraudulent commissions of fact to Plaintiffs" by Defendants, Complaint, ¶ 185, resulting in purported benefit to Defendants, "obtained . . . from Plaintiffs by fraud." Complaint, ¶ 187.

The requirement of particularity in FED.R.CIV.P. 9(b) has been construed to apply to claims "sounding in fraud." *Parrish*, 899 P.2d at 289; *Zucker v. Katz*, 708 F.Supp. 525, 530 (S.D.N.Y. 1989); *Robison v. Caster*, 356 F.2d 924, 925 (7th Cir. 1966). The Complaint reflects that Plaintiffs' conspiracy and unjust enrichment claims "sound in fraud." *See e.g.*, allegations cited above. Therefore, these claims must also be dismissed for failure to plead with the particularity required by Rule 9(b).

Moreover, the assertion by Plaintiffs that Defendant form a single business enterprise, Complaint ¶¶ 123-132, assuming *arguendo* such allegations to be accurate at all, contradict the later pleaded claims of conspiracy. An actionable civil conspiracy is a combination by two or more

persons to accomplish an unlawful purpose and is requires the showing of a meeting of the minds of two or more persons on the course of action. *Elliott v. Tilton*, 89 F.3d 260, 265 (5th Cir. 1996); *Wakefield v. State Farm Ins. Co.*, 75 F.Supp. 2d 545, 549 (N.D. Tex. 1999). A corporation/single business enterprise cannot conspire with itself through its agents or employees acting within the scope of the employment, no matter how many of its agents participate in the complained of action. *Id.* Agents of a corporation cannot form a conspiracy while acting in their corporate capacity without receiving personal gain. The acts of an agent and its principal are the acts of a single entity and cannot constitute conspiracy. *Elliott*, 89 F.3d at 265.

Because a corporate entity cannot conspire with itself, a civil conspiracy is not legally possible where a corporation(s) and its alleged co-conspirators are not separate entities, but stand in either a principal-agent or employer-employee relationship with the corporation, which is the situation that Plaintiffs allege in their Complaint. Moreover, corporate agents cannot be held liable for civil conspiracy in the absence of evidence showing they were acting for their own personal benefit rather than for the benefit of the corporation. *See e.g., Dodson v. Allstate Ins. Co.*, 47 S.W.2d 866, 876 (Ark. 2001); *Texas Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 138 (Tex. App. - Texarkana 2000, no pet.).

The actions about which Plaintiffs complain were performed by the individual Defendants as employees or officers of and performing their duties for the various entity Defendants, which Plaintiffs assert form a single business enterprise. There is no allegation that the individual Defendants, including Defendant Robert Smith, were acting other than in their various capacities as employees or officers of the corporate Defendant entities, or acting for their own respective personal benefits in committing the alleged acts. Accordingly, even if the requirements of Rule 9(b) somehow

MOTION TO DISMISS FIRST AMENDED COMPLAINT & BRIEF IN SUPPORT - Page 18

were construed to have been met by the Complaint, the civil conspiracy claim still cannot survive and must be dismissed as a matter of law. *Elliott*, 89 F.3d at 265.

### E. REQUEST FOR DECLARATORY RELIEF: DUPLICATION OF THE DAMAGE CLAIMS; NO ACTUAL CONTROVERSY.

Plaintiffs also fail to state a claim under the Declaratory Judgment Act, which Act does not create an independent cause of action, 28 U.S.C. §2201, and, therefore, should be dismissed under FED.R.CIV.P. 12(b)(6). The existence of an actual case or controversy is a condition precedent for a declaratory judgment action. *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1153 (3d Cir.1995); *Choate v. United States*, 413 F.Supp. 475, 478 (N.D. Okla. 1976). Such relief is available only when there is an actual, substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issue of a declaratory judgment. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. *Travelers*, 72 F.3d at 1153. A declaratory judgment action should only be entertained when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue.

In *Lawson v. Callahan*, 111 F.3d 403 (5th Cir. 1997), the Fifth Circuit dismissed a Declaratory Judgment Act claim under analogous facts. In that case, after determining that the litigant had no private right of action under the Civil Justice Reform Act of 1990 ("CJRA"), just as Plaintiffs have no private right of action under either the Medical Practices Act or Texas Occupational Code, the Court went on to dismiss the companion Declaratory Judgment Act claims, reasoning as follows:

> In the instant case, ***the plaintiff does not have standing to challenge the district court's reporting practices under the CJRA***. The requirements for standing were articulated by the Supreme Court aptly in *Valley Forge Christian College v. Americans United for Separation of Church and State*. In that case, the Court stated that Article III of the United States Constitution gives federal courts jurisdiction over certain cases or controversies. Proof of a "case or controversy" requires a litigant to show that: (1) "he personally has suffered some actual

or threatened injury as a result of the putatively illegal conduct of the defendant" [injury in fact]; (2) "that the injury fairly can be traced to the challenged action" [causation]; and (3) that the injury "is likely to be redressed by a favorable decision" [redressability]. The plaintiff here has fallen short on all counts. . . . Finally, she cannot show that a favorable decision by the court would redress any alleged injury. As the plaintiff had no standing to assert a claim under the CJRA, the district court was without jurisdiction to entertain the merits of the motion.

To the extent that the plaintiff relies on the Declaratory Judgment Act, her motion must similarly fail. Section 2201 states that "in a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought". The meaning of "actual controversy" for the purposes of this section is identical to the meaning of "case or controversy" for the purposes of Article III, as elaborated above. *As such, for the reasons given, the plaintiff has not satisfied the "actual controversy" requirement of § 2201. Moreover, it is well settled that this section does not confer subject matter jurisdiction on a federal court where none otherwise exists.*

*Lawson v. Callahan*, 111 F.3d at 404-405 (emphasis added).

As reflected by the opinion above, the premise of declaratory relief is the constitutional and statutory command that it only be utilized in actual cases and controversies. In each case, the Court must determine if the facts alleged under all the circumstances show there is a substantial controversy between adverse parties seeking specific relief through a decree conclusive in character, as distinguished from an advisory opinion, to warrant the issuance of a declaratory judgment. *See e.g., Wolfer v. Thaler*, 525 F.2d 977, 978 (5th Cir. 1976); *Smith v. Vowell*, 379 F.Supp. 139, 162 (W.D. Tex. 1974).

The Complaint does no more that attempt to seek an advisory opinion regarding "the corporate practice of medicine" and the validity of certain contracts to which Plaintiffs are not parties. Accordingly, the Complaint fails to set forth any actual and substantial controversy between Plaintiffs, on one hand, and Defendants Robert Smith and the Robert M. Smith entities, on the other hand and, therefore, that pleading fails to meet a material condition precedent for a declaratory judgment action. For each of the reasons set forth above, the Court should dismiss the count in which Plaintiffs seek relief under the Declaratory Judgment Act.

**F.    THE FIRST AMENDED COMPLAINT DOES NOT REFLECT THAT THIS COURT HAS SUBJECT MATTER JURISDICTION.**

The stated basis upon which Plaintiffs claim that this Court has subject matter jurisdiction is alleged to be diversity jurisdiction under 28 U.S.C. §1332(a). Complaint ¶ 5. As this Court is aware, jurisdiction is limited to cases arising under the United States Constitution, federal law, or cases involving diversity of citizenship. *See,* 28 U.S.C. §§1331, 1332. Plaintiffs do not contend that jurisdiction is based upon claims under the Constitution or federal law, and diversity citizenship claims may only be prosecuted in this Court if the amount in controversy exceed $75,000, excluding interest, costs and attorneys' fees. 28 U.S.C. §1332.

The United States Supreme Court set out the standard for determining whether the amount in controversy requirement is satisfied in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Unless a different rule is provided under the law, the sum claimed by the plaintiff controls if the claim appears to be made in good faith.

Applying that legal certainty test established by *St. Paul Mercury*, courts have ruled that, if it is apparent to a legal certainty from the face of the pleadings or after proof has been given that the plaintiff cannot recover the jurisdictional amount, the suit should be dismissed. *St. Paul Mercury*, 303 U.S. at 288-89; *Laughlin v. K-Mart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

Although courts generally accept a plaintiff's good faith allegation of the amount in controversy as contained in the complaint, where a defendant or the court challenges the plaintiff's allegations regarding the amount in question, the plaintiff who seeks the assistance of the federal courts must produce sufficient evidence to justify its claims. *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3rd Cir. 1995).

The facial attack on subject matter jurisdiction does offer similar safeguards to the plaintiffs

(as a Rule 12(b)(6) motion) such as the court must consider the allegations of the complaint as true.

The factual attack, however,

> ... differs greatly for because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to petitioners' allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictions claims.

*Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977).  The

distinction between factual Rule 12(b)(1) motions and factual Rule 12(b)(6) motions is "rooted" in

the unique nature of the jurisdictional question.  A district court has broader power to decide its own

right to hear the case than it has when the merits of the case are reached.  *Williamson*, 645 F.2d at

413.

Within this framework, it is material to note that Plaintiffs fail to allege facts sufficient to

evidence that the amount in controversy exceeds $75,000 excluding interests and costs.  The burden

of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  *Ramming v.*

*United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Because Movants here challenge the allegation

of the amount in controversy, Plaintiffs, as the parties seeking the assistance of this Court, must

produce sufficient evidence to justify their claims and must support the contention with competent

proof, *i.e.*, a reasonable probability that jurisdiction exists.  *Anthony v. Security Pacific Fin. Serv.*

*Inc.*, 75 F.3d 311, 315 (7th Cir. 1996).  Competent proof means "proof to a reasonable probability

that jurisdiction exists."  *St. Paul Mercury*, 303 U.S. at 591; *Rexford Rand Corp.*, 58 F.3d 1215,

1218 (7th Cir. 1995).

MOTION TO DISMISS FIRST AMENDED COMPLAINT & BRIEF IN SUPPORT - Page 22

In a federal diversity action, each petitioner must demonstrate the jurisdictional basis and allege the amount in controversy. *Schlesinger v. Councilman*, 420 U.S. 738, 744, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591, n. 9 (1975); *Feikema v. Texaco, Inc.*, 16 F.3d 1408, 1412 (4th Cir. 1994). It is fundamental even if the claims of each of the petitioners arise from a single cause, they may be aggregated only if they are an undivided claim.

The closest assertion of the amount in controversy in the 65-page Complaint is found in ¶213, in which Plaintiffs state only numbers purportedly representing "billings submitted by Defendants [unsegregated or identified] to Plaintiffs, concerning Accident & Injury Chriopractic patients." Although each of the numbers set forth may be greater than $75,000.00, there is no allegation under that section or any where else in the Complaint that the numbers represent amounts actually **paid** to any particular Defendants or how much of those claim totals, to the extent paid, are asserted to be part of the alleged damages claimed. The figures provided as the total amounts allegedly all Defendants is wholly irrelevant to this jurisdictional threshold issue. Moreover, no allegation in the Complaint shows which Defendant presented the claim under a recognizable cause of action to give standing to a plaintiff to assert any claim.

For each of the reasons set forth above, this Court should find that Plaintiffs' Complaint does not adequately plead jurisdiction. 28 U.S.C. §1332; *Feikama*, 16 F.3d at 1412. Each of the Allstate Petitioners' claims must be for at least $75,000.00 for this Court to have jurisdiction. Because it is undisputed Plaintiffs' case does not involve a federal question and because the amount in controversy sought by each Plaintiff has not been pleaded or shown to exceed $75,000 exclusive of attorneys' fees and costs, this Court lacks subject-matter jurisdiction and the Complaint should be dismissed in its entirety.

WHEREFORE, Defendants Robert M. Smith, Lone Star Radiology Management, LLC, White Rock Open Air MRI, LLC, North Texas Open Air MRI, LLC, Rehab 2112, LLC, Metroplex Pain Center, Inc., BS Limousine, LLC, and Lacidem Management, LP, pray the Court dismiss Plaintiffs' First Amended Complaint in all things, and for such other relief to which said Defendants respectively may be entitled.

Respectfully submitted,

_____

Christopher M. Weil
  Texas State Bar No. 21079000
Anthony A. Petrocchi
  Texas State Bar No. 15851700

WEIL & PETROCCHI, P.C.
1900 Thanksgiving Tower LB 100
1601 Elm Street
Dallas, Texas 75201
(214) 969-7272 (office)
(214) 880-7402 (facsimile)

ATTORNEYS FOR DEFENDANTS ROBERT M. SMITH, LONE STAR RADIOLOGY MANAGEMENT, LLC (dba Lone Star Radiology), WHITE ROCK OPEN AIR MRI, LLC (dba White Rock Open MRI), NORTH TEXAS OPEN AIR MRI, LLC (dba North Texas Open MRI, Harris County MRI and Bexar County MRI), REHAB 2112, LLC, METROPLEX PAIN CENTER, INC., BS LIMOUSINE, LLC, and LACIDEM MANAGEMENT, LP

## CERTIFICATE OF SERVICE

A true copy of the foregoing Defendants Robert M. Smith and Entities Motion to Dismiss First Amended Complaint and Brief in Support Thereof has been served on:

attorneys for Plaintiffs

> David Kassabian, Esq.
> Kassabian & Doyle, PC
> Suite 650, LB 21
> 1521 North Copper Street
> Arlington, Texas 76011

attorneys for Steve Smith & Tina Cheshire

> James D. Shields, Esq.
> Shields, Britton & Fraser, PC
> 5401 Village Creek Drive
> Plano, Texas 75093

attorneys for James Laughlin, DO

> Rick Disney, Esq.
> Douglas, Wuester & Disney, PC
> Fort Worth Club Tower, Penthouse I-C
> 777 Taylor Street
> Fort Worth, Texas 76102-4919

Douglas Wood, *pro se*

> Douglas Wood
> P.O. Box 260208
> Plano, TX 75206-0208

attorneys for Accident & Injury Chiropractic

> Lindy D. Jones, Esq.
> Jones Allen & Fuquay, LLP
> 8828 Greenville Avenue
> Dallas, Texas 75243

attorneys for Marion D. Padilla, MD, Advanced Medical Systems & Solutions, PLLC. and Dee Martinez

> Richard E. Young, Esq.
> Glast, Phillips & Murray, PC
> 2200 One Galleria Tower, LB 48
> 13355 Noel Road
> Dallas, Texas 75240-6657

attorney for Mohammad Bourghee (dba Family Care Pharmacy)

> Robert H. Renneker, Esq.
> 1412 Main Street, Suite 210
> Dallas, Texas 75202

attorney for Jeffrey Crocoll, DC

> Charles W. Arnold, Esq.
> Cantey & Hanger, L.L.P.
> 801 Cherry Street, Suite 2100
> Fort Worth, Texas 76102-6881

by depositing same in first-class U.S. mail, postage prepaid, on February 14, 2003.

Z:\a&i\pldg\dism2.mtn.wpd

MOTION TO DISMISS FIRST AMENDED COMPLAINT & BRIEF IN SUPPORT - Page 25

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | NO. 3-01-CV2247-H |
| RECEIVABLE FINANCE COMPANY, LLC, *et al.*, | § § § | |
| Defendants. | § § | |

DEFENDANT ROBERT M. SMITH'S REPLY TO PLAINTIFFS'
RESPONSE TO DEFENDANTS ROBERT M. SMITH AND
ENTITIES' MOTION TO DISMISS FIRST AMENDED COMPLAINT

**APPENDIX B**

DEFENDANT ROBERT M. SMITH'S REPLY TO PLAINTIFFS'
RESPONSE TO DEFENDANTS ROBERT M. SMITH AND
<u>ENTITIES' MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>

ROBERT M. SMITH, one of the Defendants in the above styled and numbered cause, files this Reply to Plaintiffs' Response to Defendants Robert M. Smith and Entities' Motion to Dismiss First Amended Complaint (Plaintiffs' "Response"), and for same would show:

1. <u>PLAINTIFFS' RESPONSE ¶¶ 35, 36; THEIR APPENDIX SHOULD BE EXCLUDED</u>

Defendant Robert M. Smith moves to exclude from consideration Response ¶¶ 35 and 36, and the "Appendix to Brief in Support of Plaintiffs' Response" incorporating Exhibits A through D, 36 pages of materials which are not pleadings, which attempt to support allegations through matters outside the pleadings, are not appropriate for scrutiny under Fed. R. Civ. P. 8(a), 9(b), and 12(b)(6).

2. <u>ADOPTION OF OTHER REPLIES</u>

Robert Smith adopts other Defendants' Replies to Plaintiffs' Responses to Motions to Dismiss.

3. <u>CORRELATION OF PLEADINGS OF MOVANT & ISSUES: ROBERT M. SMITH</u>

A. In the Amended Complaint, Plaintiffs joined, among others, Robert M. Smith with Lone Star Radiology Management, LLC ("Lone Star"), White Rock Open Air MRI, LLC ("White Rock"), North Texas Open Air MRI, LLC ("North Texas"), Rehab 2112, LLC ("2112"), Metroplex Pain Center, Inc. ("Metroplex"), BS Limousine, LLC ("BS Limo"), and Lacidem Management, LP ("Lacidem"; all, collectively, the "RMS entities"), which entities Plaintiffs allege Smith owns.

DEFENDANT SMITH'S REPLY TO RESPONSE TO MOTION TO DISMISS - Page 2

B. The Amended Complaint, other than alluding to "conspiracy" and "business enterprise" with attendant general allegations of fraud, without further explanation, only places Robert Smith in the context of the Texas Occupations Code and the Medical Practices Act ("the statutes"). In Plaintiffs' Response, they admit the Texas Occupations Code does not apply to Robert Smith, and do not assert the Texas Medical Practices Act is relevant to his conduct.

C. Plaintiffs point out "examples of factual allegations" in the Complaint against Robert Smith consist generally of ownership of the RMS entities and acts consisting of direction of the conduct of the entities, presumably as an employee. Response, p. 4, ¶ 7. Disregarding allegations of fraud to which Robert Smith's Rule 9(b) motion is leveled, none of the other allegations, including the "examples", which, as to Robert Smith, relate to acts under the statutes, for which Plaintiffs could have a cause of action as a matter of law.

D. Robert Smith's complaints about fraud, beyond the lack of specificity, are addressed to privity, reliance, and causation, which Plaintiffs also fail to allege sufficiently to survive Smith's Rule 9(b) attack.

E. Before Plaintiffs' shift in their Response, the Amended Complaint alleges under ¶ XVI, Statutory Violations, ¶¶ 134-197, and 209,

> ... Defendants have violated numerous provisions of the Texas Occupations Code. These violations are pertinent to the remaining causes of action asserted by Plaintiffs herein.

DEFENDANT SMITH'S REPLY TO RESPONSE TO MOTION TO DISMISS - Page 3

Amended Complaint, ¶ 134.

F.    In Plaintiffs' Response, they now state:

Plaintiffs are not bringing 'causes of action' under the Texas Occupations Code. Plaintiffs do reference violations of the Code, as they are pertinent to the causes of action that are plead in the law suit.

Response, p. 3, ¶ 4.

G.    Despite allegations of directing licensees, Plaintiffs allege the licensees act independently of Robert Smith. Amended Complaint, ¶¶ 11, 21, 38, 50, 51.

H.    Plaintiffs' prayer for relief, when analyzed, simply seeks "relief for common law fraud and conspiracy" (Prayer ¶¶ (1)-(5)), something for "relief for unjust enrichment" (Prayer ¶¶ (6)-(10)), without designation of whether same is from the insured, claimant, other Defendants, or Robert M. Smith with whom Plaintiffs do not even allege privity, and for declaratory relief which now is alleged to be merely "pertinent", in that:

(12) [others] and Robert Smith are engaged in the unauthorized employment of medical and osteopathic physicians;
(13) [others] and Robert Smith are engaged in the unauthorized corporate practice of medicine;
(14) ... contracts... between [specified other Defendants] and Robert Smith and medical and osteopathic physicians are illegal and void as a matter of law;
(15) ... contracts ... between [specified other Defendants] and Robert Smith and medical and osteopathic physicians are void as a matter of public policy;
(16) ... Plaintiffs are not obligated to pay any amount billed by [Defendant Receivable for medical services including fees transferred to other Defendants];
(17) ... services billed through Defendant [Receivable] were billed in violation of the Texas Medical Practices Act including fees transferred to other Defendants], and that Plaintiffs are entitled to reimbursement [of] payments previously made;
(18) ... services billed [by Defendants A&I, Metroplex, Lone Star, North Texas, White Rock, or Rehab 2112 and] any medical or osteopathic doctor for services billed through [Defendant Receivable] are void due to... violations of the Texas Occupations Code, and due to the fraudulent nature of the bills;
(19) ... Plaintiffs are not obligated to pay [bills] of [Defendants A&I, Receivable, Metroplex, Lone Star, North Texas, White Rock, or Rehab 2112]... [and doctors for services billed through Defendant Receivable and that] Plaintiffs are entitled to reimbursement....

I.    Relying that "Plaintiffs do not seek license revocation", or other relief under the statutory matters, Plaintiffs now explain

DEFENDANT SMITH'S REPLY TO RESPONSE TO MOTION TO DISMISS - Page 4

the "violations of these statutes are relevant in regard to the causes of action [Plaintiffs] do bring", again emphasizing "[t]hese violations are pertinent to the remaining causes of action asserted by Plaintiffs herein". Response, pp. 9-10, ¶ 16. This can only be read to mean that while not relying upon the statutes for recovery, Plaintiffs seek to recover by reason of the statutes. Consider the report and recommendation of United States Magistrate Judge (Sanderson) concluded, with respect to earlier allegations of the original Complaint, when only Receivable Finance was the targeted offender:

> What the Complaint does seek as relief is a determination with respect to Petitioners' insureds, who have been billed directly or indirectly by R.F.C. for medical services that any obligation for payment which might otherwise obtain is void because enforcement would violate the law and/or be against public policy.

Response, p. 11, ¶ 18. Assuming Robert Smith owned the RMS entities, employed chiropractors, and acted as an employee, this conduct cannot provide a basis for relief against him.

J. In stretching to apply the Amended Complaint and, inferentially, the Texas Medical Practices Act, Plaintiffs allege that "Robert Smith interview[ed] medical doctors for employment", Response, ¶ 26. Plaintiffs rely that because they allege that "Robert Smith is the owner of Accident & Injury", Response, p. 4, ¶ 7.a, somehow this amounts to conspiracy. Plaintiffs now assert that their "example[s] of factual allegation" will support either fraud or statutory claims against Robert Smith, but none are identified other than allegations of conspiracy, without connection to alleged fraud or alleged statutory violations.


DEFENDANT SMITH'S REPLY TO RESPONSE TO MOTION TO DISMISS - Page 5

K.   Plaintiffs now claim that Robert Smith's expression of concern that "medical narrative reports were not being generated quickly enough", Response, p. 16, ¶ 30; p. 19, ¶ 36, somehow is sufficient to show conspiracy to commit a well-pled wrongful act, *i.e.*, fraud or statutory violation.

L.   Since

Plaintiffs have not alleged all Defendants constitute a "single business enterprise" pursuant to Texas law [if applicable at all, annotated to cite *Superior v. Anderson*, 831 S.W.2d 268 (Tex. App. - Houston [14th Dist., writ denied), which is inappositely cited].

and

Notably, the [Amended] Complaint does not state Robert Smith himself is part of a "single business enterprise".

Response, pp. 17-18, ¶ 33, only well-pled allegations of conspiracy to commit well-pled allegations of fraud should prevent dismissal of the Complaint against Robert Smith.

M.   Plaintiffs now reveal that Robert Smith should discern that "many of the conspiracy allegations in regard to Robert Smith [only] concern his dealings with medical doctors", Response, p. 18, ¶ 35.  Conspiracy to do what, if not "aid and abet" violation of the Act, which Plaintiffs concede they cannot enforce, and if declaratory relief were obtained for employment previously argued, even then finding of unlawful act would have no effect upon Robert Smith's liability.

N.   Again, Robert Smith's individual conduct as alleged seems to be limited to facilitating arrangements with respect to Receivable Finance, the wrongfulness of which can only be determined under the Texas Medical Practices Act, *see* Response, p. 19, ¶ 36, or the use of a template system, not wrongful *per se*,

DEFENDANT SMITH'S REPLY TO RESPONSE TO MOTION TO DISMISS - Page 6

which must be predicated upon the Texas Medical Practices Act, or the Texas Occupations Code, which Plaintiffs have failed to adequately plead.

O.    If the foregoing allegations are not premised on monetary relief to be granted under the statutes as private causes, how else do they apply? *See* Plaintiffs' discussion attempting to justify "controversy" in their Response, ¶¶ 38-40.    Magistrate Judge Sanderson's opinion was related only to Receivable Finance's paper and its possible avoidance, not Receivable's damaging conduct.

P.    The issue is whether, assuming the allegations of the Amended Complaint joining Robert Smith are true for the purposes of the examination, Plaintiffs have stated an actionable complaint against Smith under either statutory scheme.    If Plaintiffs have conceded that they do not, which appears from their Response, then the Court should conclude that they have not, and such allegations against Robert M. Smith should be dismissed.

4.    DECLARATORY RELIEF IS SURPLUSAGE AND SHOULD BE DISMISSED

A.    To state a claim for declaratory relief, Plaintiffs must but do not allege a dispute with either Defendants Robert Smith or the RMS entities, "pertinent" to 28 U.S.C. § 2201.    A plaintiff must allege a "justiciable controversy" in order to state a claim for declaratory relief.    *Heimann v. Nat'l Elevator Ind. Pension Fund*, 187 F.3d 493, 510 (5th Cir. 1999) (citations omitted).    The complaint must disclose a "legal right, relation, status, or interest claimed by plaintiff over which a dispute with defendant has arisen".    *Id.* at 510, citations omitted.    While procedural, and

DEFENDANT SMITH'S REPLY TO RESPONSE TO MOTION TO DISMISS - Page 7

usually a cumulative remedy given liberal interpretation, a motion to dismiss for failure to state a claim may be granted if it appears that the plaintiffs are not entitled to relief under any set of facts which could be proven in support of plaintiffs' claim, *id.*, but

> Proceedings under the Declaratory Judgment Act are governed by the same pleading standards that are applied in other federal civil actions. 5 Wright & Miller, *supra*, § 1238 at 285 (footnotes omitted citing authorities). The plaintiff must allege a "justiciable controversy" in order to state a claim for declaratory relief, *id., citing Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937), *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, etc.*, 137 F.2d 176 (5th Cir. 1943), *aff'd* 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944). The complaint must disclose a "legal right, relation, status, or interest claimed by plaintiff over which a dispute with the defendant has arisen." 5 Wright & Miller, *supra* at 287 (*citing Paper Carriers Union No. 450 v. Pulitzer Pub. Co.*, 309 F.2d 716 (8th Cir. 1962); *see also Aralac, Inc. v. Hat Corp. of America*, 166 F.2d 286 (3rd Cir. 1948)....

*Heimann*, *supra*, 187 F.3d at 510.

B.    Plaintiffs allege that Robert Smith, as an individual, owns the RMS entity defendants, itself not wrongful.  Even as Plaintiffs' earlier and current Complaints suggest, before Plaintiffs distanced themselves from seeking direct relief through their "pertinent" allegations of statutes governing the chiropractors' and medical doctors' conduct, actionable relevance to Robert Smith or the RMS entities is not shown by the current pleading, notwithstanding Plaintiffs' Response claiming it is so.

C.    Significant time and other resources necessarily will be expended if inclusion of governing statutes of chiropractors and medical doctors continues.  No ultimate relief under such statutes

DEFENDANT SMITH'S REPLY TO RESPONSE TO MOTION TO DISMISS - Page 8

can be granted under Plaintiffs' current pleadings. State law expressly would preclude such pleadings.[1]

5.  **WHAT REMAINING LIABILITY OF ROBERT SMITH IS ALLEGED?**

A.  Plaintiffs have not sufficiently alleged fraud to satisfy the requirements of Fed. R. Civ. P. 9(b). Without fraud, conspiracy cannot apply to Robert Smith.

B.  Plaintiffs have not shown that their allegations of statutory "breaches", if any of others, have any "pertinence" to conduct of Defendant Robert Smith, and in fact, Plaintiffs impliedly acknowledge that, excepting Receivable Finance, allegations seeking declaratory relief under the statutes are not relevant. Such allegations are misleading and inflammatory surplusage.

C.  Plaintiffs admit in their Response Brief that allegations of conspiracy of Robert Smith are exclusively based upon alleged conduct with respect to Receivable Finance, and not other Defendants.

D.  While Plaintiffs allege ownership of the RMS entities, actionable conduct, if any is clearly alleged, must be Robert Smith's employment, and no allegations have been made which connect such employment with conspiracy. Plaintiffs admit Smith can own

---

[1]    There is no basis for declaratory relief when the party is seeking in the same action a different enforceable remedy and a judicial declaration would add nothing to what would be implicit or express in a final judgment for the enforceable remedy. *Universal Printing Co., Inc. v. Premier Victorian Homes, Inc.*, 73 S.W.3d 283 (Tex. App. - Houston [1st Dist.] 2002); *see also Kenneth Leventhal & Co. v. Reeves*, 978 S.W.2d 253, 258-59 (Tex. App. - Houston [14th Dist.] 1998) (declaratory plea may not be coupled to damage action simply in order to pave way to recover attorneys' fees); *Barnett v. City of Colleyville*, 737 S.W.2d 603, 607 (Tex. App. - Fort Worth 1987, writ denied) (citing *Joseph v. City of Ranger*, 188 S.W.2d 1013 (Tex. Civ. App. - Eastland 1945, writ ref'd w.o.m.) (no necessity for declaratory judgment; such judgment would serve no useful purpose where parties were before the court and had joined issue upon all questions involved in suit).

DEFENDANT SMITH'S REPLY TO RESPONSE TO MOTION TO DISMISS - Page 9

clinics, is not a health provider under the statutes, and the licensee employees act independently.

E.   Even if the pleadings implicated Robert Smith as a co-conspirator, based on his Fed. R. Civ. P. 9(b) Motion as to the inadequacy of fraud allegations, and standing as to the statutory allegations, there are no wrongful acts or purposes for which allegations of conspiracy can stand.

F.   Assuming that allegations that Robert Smith is the owner of Accident & Injury, and that Robert Smith "wanted [Padilla] to designate at least 10% of the Accident & Injury patients referrals he saw as surgical candidates", are taken as true (notwithstanding Dr. Laughlin's later correction), and that Robert Smith was personally involved in the recruitment and selection of medical doctors who performed "second opinion medical examinations", as alleged in the Amended Complaint (Response, p. 4-5, § 7), such matters have no well-pled connection with the statutes alleged, or arguably anything else that might constitute Smith's wrongful conduct.

6.   <u>CONCLUSION</u>

Defendant Robert Smith is alleged to be the owner of interests in the Defendant RMS entities.  Not actionable, even under the statutes governing professionals, if declaratory relief was available to Plaintiffs, such facts are insufficient for liability. Plaintiffs admit that they are not seeking such relief except to show some conduct was unlawful, *per se*, in order to reach reimbursement, not from insureds who were paid, but from Defendant

DEFENDANT SMITH'S REPLY TO RESPONSE TO MOTION TO DISMISS - Page 10

"third parties" to the Plaintiffs. Robert Smith is not in privity with the Plaintiffs.

Plaintiffs' claims are not against Robert Smith, as the Plaintiffs seek "reimbursement for claims" and declaration concerning others. Inexplicably, Robert Smith is joined because he owns, and implicitly is an employee of the RMS entity defendants. Neither is actionable. If fraud of another was adequately alleged, as an employee, Robert Smith cannot be liable for the conspirational actions of his employer. If, for the sake of argument, Robert Smith's conduct as an owner constituted conspiracy with the RMS entities and others, no wrongful acts with respect to Plaintiffs are alleged to be the object of Defendants' "conspiracy", because Plaintiffs deal with, negotiate with and pay their insureds, who are neither parties nor identified.

The fraud allegations of the Amended Complaint are conclusory, notwithstanding objectionable collateral testimony, which testimony cannot constitute proper allegations, or be taken as true for purposes of considering Fed. R. Civ. P. 9(b).

No defendant argues that an illegal contract is enforceable; all argue that declaration of illegality of a contract requires a direct interest in the controversy which Plaintiffs lack, and allegation of illegality as between Plaintiffs and Defendants.

Defendant Robert Smith has properly moved the Court to dismiss Plaintiffs' pleadings as to him because there are no statutory allegations under any set of facts upon which Plaintiffs could recover directly from him, and because the allegations of common

DEFENDANT SMITH'S REPLY TO RESPONSE TO MOTION TO DISMISS - Page 11

law fraud fail because of Rule 9(b), leaving allegations of conspiracy without unlawful purpose.

Respectfully submitted,

_____

Christopher M. Weil
  Texas State Bar No. 21079000
Anthony A. Petrocchi
  Texas State Bar No. 15851700

WEIL & PETROCCHI, P.C.
1900 Thanksgiving Tower LB 100
1601 Elm Street
Dallas, Texas  75201
(214) 969-7272 (office)
(214) 880-7402 (facsimile)

ATTORNEYS FOR DEFENDANTS ROBERT M.
SMITH, LONE STAR RADIOLOGY
MANAGEMENT, LLC (dba Lone Star
Radiology), WHITE ROCK OPEN AIR
MRI, LLC  (dba White Rock Open
MRI), NORTH TEXAS OPEN AIR MRI, LLC
(dba North Texas Open MRI, Harris
County MRI and Bexar County MRI),
REHAB 2112, LLC, METROPLEX PAIN
CENTER, INC., BS LIMOUSINE, LLC,
and LACIDEM MANAGEMENT, LP

## CERTIFICATE OF SERVICE

A true copy of the foregoing Defendant Robert M. Smith's Reply to Plaintiffs' Response to Defendants Robert M. Smith and Entities' Motion to Dismiss First Amended Complaint has been served on:

attorneys for Plaintiffs

David Kassabian, Esq.
Kassabian & Doyle, PC
Suite 650, LB 21
1521 North Copper Street
Arlington, Texas 76011

attorneys for Steve Smith & Tina Cheshire

James D. Shields, Esq.
Shields, Britton & Fraser, PC
5401 Village Creek Drive
Plano, Texas 75093

attorneys for James Laughlin, DO

Rick Disney, Esq.
Douglas, Wuester & Disney, PC
Fort Worth Club Tower, Penthouse I-C
777 Taylor Street
Fort Worth, Texas 76102-4919

Douglas Wood, *pro se*

Douglas Wood
P.O. Box 260208
Plano, TX 75206-0208

attorneys for Accident & Injury Chiropractic

Lindy D. Jones, Esq.
Jones Allen & Fuquay, LLP
8828 Greenville Avenue
Dallas, Texas 75243

attorneys for Marion D. Padilla, MD, Advanced Medical Systems & Solutions, PLLC. and Dee Martinez

Richard E. Young, Esq.
Glast, Phillips & Murray, PC
2200 One Galleria Tower, LB 48
13355 Noel Road
Dallas, Texas 75240-6657

attorney for Mohammad Bourghee (dba Family Care Pharmacy)

Robert H. Renneker, Esq.
1412 Main Street, Suite 210
Dallas, Texas 75202

attorney for Jeffrey Crocoll, DC

Charles W. Arnold, Esq.
Cantey & Hanger, L.L.P.
801 Cherry Street, Suite 2100
Fort Worth, Texas 76102-6881

by depositing same in first-class U.S. mail, postage prepaid, on March _____, 2003.

_____

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ALLSTATE INSURANCE COMPANY, §
et al., §
§
Plaintiffs, §
§
vs. §     NO. 3-01-CV2247-N
§
§
RECEIVABLE FINANCE COMPANY, LLC,§
et al., §
§
Defendants. §

<u>AFFIDAVIT OF ROBERT M. SMITH</u>

THE STATE OF TEXAS §
§
COUNTY OF DALLAS §

BEFORE ME, the undersigned authority, on this day personally appeared ROBERT M. SMITH, known to me to be the person whose name is subscribed hereto, and who, being first duly sworn, stated as follows:

1.    My name is Robert M. Smith.  I am an adult, one of the Defendants in the suit in which this affidavit is made, and am competent and authorized to make this Affidavit.  I have personal knowledge of the material facts stated herein, which facts as stated are true and correct.

2.    I am the sole member (and sole managing member) of Receivable Finance Company, LLC ("RFC"), Accident & Injury, LLC ("A&I"), and of Lone Star Radiology Management, LLC (dba Lone Star Radiology), White Rock Open Air MRI, LLC  (dba White Rock Open MRI), North Texas Open Air MRI, LLC (dba North Texas Open MRI, Harris County MRI and Bexar County MRI), REHAB 2112, LLC, and

AFFIDAVIT OF ROBERT M. SMITH - Page 1

**APPENDIX C**

Metroplex Pain Center, Inc. (collectively, "the Diagnostic Entities").

3.    I am the chief executive officer of most of the entities and act under contract with A&I, as chief executive officer of the Diagnostic Entities.

4.    I am not a licensee under either the Texas Medical Practices Act, Tex. Occ. Code §§ 155.001, *et seq.*, or the act governing the practice of chiropractic, Tex. Occ. Code §§ 201.001, *et seq.*, nor am I required to be licensed by such acts.

5.    A&I provides chiropractic services to the public which services are performed by licensees under the act governing the practice of chiropractic, Tex. Occ. Code §§ 201.001, *et seq.*

6.    From time to time, the chiropractors refer patients to one or more of the Diagnostic Entities for services illustrated by magnetic resonance imaging ("MRI") scans, and other testing aided by specialized equipment, and where deemed by a chiropractor to be reasonably necessary and appropriate, for second opinions or other specialized services by medical or osteopathic doctors, ranging from specialized treatment to reviews of, and opinions on x-rays and MRI reports.

7.    A substantial number of A&I patients are attracted to A&I by extensive advertising and often referred by personal injury compensation lawyers, both as a result of automobile collision and on-the-job or worker's compensation injuries.

8.    Typically, A&I's patients do not, and did not have personal injury protection incidental to their automobile liability

AFFIDAVIT OF ROBERT M. SMITH - Page 2

insurance coverage or other health care insurance, and many of these patients' lawyers undertake to A&I to collect from compensation awards from settlement or judgment to pay A&I professional care expenses, both by chiropractors and others delivering services incidental to A&I's primary care of the patient.

9.   In the few instances where personal injury protection is involved, Plaintiffs (with its affiliates and adjusters, collectively, "Allstate"), through an Allstate affiliate, receives a statement which it may either pay or resolve with its insured when all claims involved in the automobile occurrence are resolved, in which event, A&I or one of the Diagnostic Entities may receive a direct payment.  Otherwise, all payments to A&I are from the patient or the patient's attorney, typically as the result of settlement between the patient's attorney and Allstate's attorney or adjuster.

10.  In no event is there, nor has there been, a dialogue between A&I and Allstate personnel (including adjusters acting on Allstate's behalf).

11.  A&I is never, and has never been a participant in the negotiations between the representatives of Allstate and its patient or its patient's lawyer.

12.  Controverted claims typically are compromised and settled without allocation of amounts for health care and prescription medicine necessitated by or incidental to the automobile collision,

AFFIDAVIT OF ROBERT M. SMITH - Page 3

nor with respect to past, present or future pain and suffering and loss of wages.

13.   About the time of A&I's significant expansion to its current approximately 20 clinics, in late 1998, Allstate began to specially monitor automobile collision claims involving patients being treated by A&I and its affiliates, purportedly because of "suspicions" of allegedly "excessive" and "unnecessary" medical treatment, or presumed but unconfirmed charges for reportedly undelivered goods and services.

14.   In all events, at the latest, by January 1, 1999, Allstate was aggressively investigating its claims of excessive A&I (and its affiliates') care, which claims A&I has consistently denied.

15.   Allstate continued to pay claims and settle suits in which A&I and its affiliates' treatment and services were involved.

16.   This suit in which this Affidavit is made was initially filed on November 9, 2001, against Receivable Finance Company, LLC, Advanced Medical Systems & Solutions, PLLC, and Marlon D. Padilla, MD, PA., complaining that RFC was engaged in the unauthorized, corporate practice of medicine, in violation of the Texas Medical Practices Act because RFC had acquired deeply discounted medical doctors' accounts receivable resulting from their consultation and/or treatment of A&I patients, where the services of a medical doctor, as contrasted with a chiropractor alone, were deemed reasonably medically required by a treating chiropractor for consultation opinion or treatment.

AFFIDAVIT OF ROBERT M. SMITH - Page 4

17.  The RFC suit grew to this present state when this Court granted leave for the amendment joining the present parties (and some subsequently dismissed parties) in November 2002.

18.  Although I am the sole member and chief executive officer, I did not and do not provide or become directly involved with delivery of health care services to patients of A&I and its affiliates.

19.  My actions concerning A&I and the Diagnostic Entities have always been as an employee, contractor, or agent, and not otherwise.

20.  I did not and do not supervise chiropractors employed by A&I, or those medical doctors with whom A&I chiropractors consult or coordinate services for A&I patients under treatment by chiropractors.

21.  Although I interview and communicate with health care professionals delivering services to A&I patients, but I do not direct or interfere with their professional judgment for which they have a duty to independently exercise under the Texas Medical Practices Act, Tex. Occ. Code §§ 155.001, *et seq.*, or the act governing the practice of chiropractic, Tex. Occ. Code §§ 201.001, *et seq.*

22.  BS Limousine, LLC and Lacidem Management, PLLC, of which I was a principal, ceased to do business before the period for which Plaintiffs seek damages.

AFFIDAVIT OF ROBERT M. SMITH - Page 5



ROBERT M. SMITH

Subscribed and sworn to before me on June 21, 2004.

Notary Public in and for
the State of Texas

Marycella Silva
Notary's name printed

Commission expires: 1-19-07

MARYCELLA SILVA
Notary Public
State of Texas
My Commission Expires
January 19, 2007

Z:\a&i\pldg\rs-aff.wpd

AFFIDAVIT OF ROBERT M. SMITH - Page 6